## Bowling, et al. v. Bowling.

(Decided November 2, 1916.)

### Appeal from Pike Circuit Court.

1. Cancellation of Instruments—Evidence.—To authorize the cancellation of a written contract upon the ground of fraud or mistake the evidence must be clear and convincing.

2. Contracts—Repugnant Clauses—Construction.—Apparently repugnant clauses in a written contract must be reconciled if it can be done by any reasonable construction.

STRATTON & STEPHENSON and HAZELIP & HAZELIP for appellants.

CHILDERS & CHILDERS and J. M. BOWLING for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

On the 29th day of September, 1908, the appellants, Sophia Bowling and her husband, James Bowling, entered into a written agreement with J. M. Bowling, by the terms of which they sold and agreed to convey to him within twelve months thereafter two tracts of land in Pike county, containing about three hundred acres, in consideration of which appellee, J. M. Bowling, agreed to pay them, in addition to $1.00, recited to have been paid cash in hand, the sum of $20.00 per acre for the acreage in the two tracts of land as should be ascertained by survey to be made by a competent surveyor for appellants, but at the expense of appellee, and that said sum should be payable after the true acreage had thus been ascertained and an abstract of appellant's title furnished by them to appellee.

This agreement was filed by appellee and recorded in the clerk's office of the Pike county court on December 11, 1909. As recorded, there is attached the following certificate of acknowledgment:

"State of Kentucky, County of Pike, to-wit: I, W. M. Bowling, a Notary Public in and for the County and State aforesaid, certify that James Bowling and Sophia Bowling whose name is signed to the writing hereto annexed bearing date the 29th day of Sept., 1908, has acknowledged same before me in my county aforesaid.

"My commission as notary public will expire at the end of the next session of the State Senate.

"Given under my hand and seal this 29th day of Sept., 1908.

"W. M. Bowling,
"Notary Public in and for the County and State
                aforesaid."
(Notarial Seal.)

On August 25, 1910, appellants instituted this action against appellee in the Pike circuit court alleging that the contract executed and delivered by them to appellee, J. M. Bowling, in September, 1908, was merely a ninety-day option to sell the land and was not the contract of record; that by alterations appellee had changed the contract which they executed from a ninety-day option to a contract of sale, and that as it appeared upon the record it was a cloud upon their title to the land and destroyed its vendible value. They deny that the contract they had executed was acknowledged by them or either of them before W. M. Bowling, or at all, and prayed that the contract be cancelled and their title to the land quieted.

To this petition appellee filed answer and counter-claim, traversing the allegations of the petition and alleging that the contract was signed and acknowledged by appellants as recorded, and seeking a specific perform-ance of the contract.

Appellants filed a reply traversing the affirmative al-legations of the answer, and H. H. Stallard filed a peti-tion to be made a party, alleging that he had purchased the land involved from appellants and was the owner thereof. Stallard was made a party and his petition was traversed of record.

An amended petition and an amended answer and counter-claim were filed, but these pleadings did not change the issues as above stated.

Depositions of many witnesses were taken and the case was submitted by agreement to the Honorable W. C. Halbert, as special judge, who rendered a judgment dis-missing appellant's petition, sustaining appellee's counter-claim for a specific performance of the contract and cancelling the deed from appellants to Stallard, from which judgment Sophia Bowling and James Bowling have appealed.

While counsel for appellants have subdivided their briefs under numerous headings, but two questions in reality are presented, viz.: (1) That the chancellor's

finding that the contract as recorded was the contract executed by the parties is contrary to the evidence, and, (2) that the contract as recorded is a mere option to sell.

Appellants introduced but three witnesses to support the allegations of their petition, namely: appellants Sophia Bowling and James Bowling, and W. M. Bowling, a notary public, whose certificate of acknowledgment appears upon the contract. Since appellants are husband and wife, exceptions were filed to their depositions upon the ground that both could not testify, and having been required to elect whether the wife, who owned the land, or her husband, should be allowed to testify in the case, and appellant Sophia Bowling having elected to testify, and having testified, the exception was sustained to her husband's deposition and it was excluded from the record in this case under authority of City of Covington v. Geyler, 93 Ky. 275; L. & N. R. Co. v. Hall, 143 Ky. 498, and Weber v. Lape, 145 Ky. 769, and to this ruling no objection is made here, so we have before us in behalf of appellants only the testimony of Sophia Bowling and W. M. Bowling.

Since counsel for appellants argue with evident conviction that the chancellor's finding is contrary to the evidence, we will state the substance of the testimony of each of the witnesses.

Appellant Sophia Bowling testified that she was the owner and in possession of the land, and in answer to a question if she signed a contract, the basis of this action, replied: "I signed a ninety-day option on the 9th day of September, 1908. I signed it by mark. If the contract filed in this suit is the one I signed, it has been materially changed since I signed it;" that part of the contract that says "within twelve months" was only "ninety days" in the contract she signed and the contract was to be returned to her in ninety days, was not to be recorded, and after ninety days was to be void; that she knows W. M. Bowling; that he was not present and did not take her acknowledgment to the option; that there was no one present but her husband, appellee and herself, and that appellee told her that if he could not sell the land within ninety days he would return the option; that her husband, James Bowling, signed the contract in her presence; that after it was signed appellee read it over, but she had no recollection of her husband

having had the contract in his hands or having read it; that in February after the contract was signed appellee came to her and said the company had sent him there to open up the coal veins around the Flat Woods; that his employes passed her house in going to and coming from work in making these coal openings; that appellee completed one and commenced other openings on her land, and that the contract was dead; that Ferril Coleman, one of George Frances' boys, Creed Bentley, Willie Belcher and Willie Smallwood were working for appellee in making these openings; that appellee brought some parties there, and that her husband and others went with them and appellee up the branch to look at the coal land; that while she knew appellee and his hands were making some openings on her land, there was very little work done, and that she would not have permitted it to be done except that appellee said the company sent him and that his contract was dead; that the contract she signed was all in writing and no part of it was printed; that she and her husband had recently sold and conveyed the land in controversy to H. H. Stallard for $30.00 an acre.

W. M. Bowling testified that at the time he gave his deposition he was a member of the Kentucky Legislature; that the appellant, James Bowling, and appellee, J. M. Bowling, are his brothers. He denied that he took the acknowledgment to the contract or that the signature to the certificate was his writing; and stated that he went with appellee to the home of appellants in September, 1908, but that he had no recollection of any conversation with either of the appellants then or at any other time about a contract with appellee for the sale of their land.

Appellee testifying in his own behalf stated that W. H. Flannery, a lawyer in Pikeville, furnished the blank used in making the contract in question and filled in all of the written parts thereof at his direction; that he, appellee, took this contract and went to the home of appellants, and at their suggestion, wrote into the contract the provision excepting from the contract all timber over 14 inches in diameter, after which appellants and he signed it; that the contract when signed was exactly as it is now; that he read it to them and that appellant, James Bowling, read it before it was signed by the parties; that when he brought the contract back to Pikeville and showed it to Mr. Flannery, Mr. Flannery informed

him it would have to be acknowledged before a notary public; that on Tuesday, September 29th, he got W. M. Bowling, a notary public, to go with him to the home of appellants and they acknowledged before W. M. Bowling the execution of the contract, and that when they got back to W. M. Bowling's office, W. M. Bowling filled out the certificate or helped to fill it out and signed it and put his seal on it; that after the refusal of appellants to permit the land to be surveyed he heard that W. M. Bowling was denying that he had taken the acknowledgment to the contract; that he took Mart Bowling and Willie Belcher with him and went to W. M. Bowling and asked him if he was denying that he took the acknowledgment, when W. M. Bowling said that anybody who told that he did not take the acknowledgment told a lie; that in February, 1909, after the contract was executed, appellee employed hands, one of whom was appellant James Bowling, and made a number of openings upon the land in controversy, and adjoining lands, for the purpose of exposing the coal veins; that he brought a number of outside capitalists to view the coal veins in an effort to make a sale of this land; that all of his efforts to sell the land were made with the knowledge of the appellants, and that James Bowling was present and assisting him in these efforts; that on the night of the 14th of February, 1909, he stayed at the home of the appellants with Charles Morris, of Morgantown, W. Va., Thos. Williams, of Cleveland, Ohio, and a Mr. Heflin, of Huntington, W. Va., and appellants stated to these men "that they had given me a contract on this property, and had put it into my hands to sell and that whatever I done would be alright with them." That appellants continuously urged him to sell this land up until about the first of July, 1910; that he sold it on the 15th day of January, 1910, to D. D. Hull, general counsel for the Virginia Coal, Iron & Coke Company of Roanoke, Va.; that he sent surveyors upon the land to survey it, and that it was then for the first time that appellants denied the contract and refused to allow the surveyors to survey the land; that after this he had a conversation with appellant James Bowling in the presence of a Mr. Fleu, in which appellant said "that they did sign and acknowledge the contract, but that he thought he was signing it to the Northern Coal & Coke Company and that he was willing for me to sell it to the Northern Coal & Coke Company, but that

the Virginia Iron & Coke Company should not have it at all.''

Martin Bowling testified that he is a brother of appellee and the appellant, James Bowling; that he worked for J. M. Bowling along with James Bowling in the Spring of 1909 in making the openings on the land in controversy; that he had a conversation with Sophia Bowling in which she said that she was willing for J. M. Bowling to have pay for his trouble and what he was out, but that she did not intend that he should make it all off her; that land in that neighborhood, at that time, was selling at $7.00 to $10.00 an acre; that he was present when appellee asked W. M. Bowling at Pikeville if he denied that he had taken the acknowledgment of appellants to the contract in question here and he heard W. M. Bowling say in answer to that question, ''that whoever said he said that he did not take the appellant's acknowledgment to that contract was a liar.''

Alvin Bartley stated that he worked for appellee in the Spring of 1909 in making the openings on the land and that James Bowling worked there, too.

Henan Bowling said he helped make these openings, some of which were made on the land in controversy, and that James Bowling was also employed by appellee in the same work.

Willie Belcher testified that he was employed by J. M. Bowling to help make the openings on the land in controversy in the spring of 1909, and that James Bowling was present and assisting in the work; that he had frequently talked with appellants and from his conversations with them gained the impression that they had made a contract with appellee for the sale of the land, but did not remember the exact conversation, but the first time he knew of their denial of the contract was when they refused to allow it to be surveyed; that he was along when appellee brought several strangers to view the land in controversy, and that appellant, James Bowling was also present and seemed anxious to have the sale consummated; that he was present and heard a conversation between appellee and W. M. Bowling in Pikeville when appellee asked W. M. Bowling if he denied taking the acknowledgment of appellants to the contract for the sale of their land; that he could not remember just what was said, but it was his impression from their conversation that W. M. Bowling did not deny taking the acknowl-

edgment, but said something about "whoever said he denied it was a liar," or something of that kind.

W. H. Flannery stated that he was an attorney in Pikeville; that he furnished the blank and drew up the contract in question for appellee; that all of the written parts of the contract were written by him except the part excluding from the contract all trees over 14 inches in diameter; that that part was in the handwriting of J. M. Bowling.

J. E. Childers and A. E. Childers stated that they are acquainted with the handwriting of W. M. Bowling, and that the signature to the certificate of acknowledgment of the contract in question is, in their judgment, in the handwriting of W. M. Bowling.

J. W. Ratliff stated that he is clerk of the Pike county court; that he is familiar with the handwriting of W. M. Bowling and that the signature to the certificate of acknowledgment is that of W. M. Bowling and in his handwriting.

J. W. Reedy stated that in the month of February, 1910, D. D. Hull, general manager of the Virginia Iron, Coal & Coke Company, ordered him to go upon the land in controversy and clean out the openings; that while he was so engaged James Bowling came to him and objected to his working upon the land, and in a conversation told him "that he did give J. M. Bowling a contract on the land, but he said he knew J. M. Bowling was making a big thing off of it, and that he did not intend for J. M. Bowling to make it;" that James Bowling further said to him "that he was willing for J. M. Bowling to have back what money he had spent and pay for his time, but that he was not willing for him to make no big thing off of it."

W. G. Fleu stated that he is an attorney at law residing at Gate City, Virginia; that while he was in Pikeville making an abstract of the title to the lands in controversy for D. D. Hull, general counsel for the Virginia Iron, Coal & Coke Company, he heard a conversation between J. M. Bowling and James Bowling, in which James Bowling said to J. M. Bowling: "I know we gave you the contracts but we thought you were going to sell them to the Northern Coal & Coke Company, and that the Virginia Iron, Coal & Coke Company couldn't have the land."

Geo. H. Belcher stated that he was acquainted with the value of the land in the neighborhood of this land in 1908, and at that time it was selling from $7.50 to $10.00 per acre; that James Bowling told him that he had contracted his lands to J. M. Bowling for $20.00 per acre.

G. R. Heflin states that he is an attorney and lives in Huntington, W. Va.; that he went to Pikeville, Kentucky, about the middle of February, 1909, with a Mr. Morris, of Morgantown, W. Va., a Mr. Williams, of Cleveland, Ohio, and a Mr. Merrill from somewhere in Ohio; that they went from Pikeville with J. M. Bowling to James Bowling's place, where they stayed all night, and the next morning, in company with James Bowling, went to look at the coal openings that J. M. Bowling had made upon the land of James Bowling; that while they were at the home of James Bowling, James Bowling and his wife informed him that they had placed this property in the hands of J. M. Bowling for sale, and that whatever arrangement or transaction regarding the sale of same he might make with J. M. Bowling would be satisfactory to them.

Martin Bowling states that he is a brother of James and J. M. Bowling; that he was acquainted with the handwriting of W. M. Bowling and that the signature to the certificate of acknowledgment to the contract of sale for appellant's land was in the handwriting of W. M. Bowling.

A. L. Ratliff states that he is a lawyer residing at Pikeville, Kentucky; that he knows the handwriting of W. M. Bowling and that the signature to the certificate of acknowledgment upon the contract is the signature of W. M. Bowling.

1. This is all of the admitted evidence except that the original contract is before us and we have carefully inspected it, but we find nothing from that inspection to support appellant's contention. That evidence necessary to cancel a written obligation, or to alter or vary its terms, upon the ground of fraud or mistake, must be strong and convincing, is thoroughly established—see Northern Coal & Coke Co. v. Bates, 146 Ky. 624, and Carter v. Estep, 30 K. L. R. 1144—and that the evidence here does not rise to that dignity is manifest; in fact, the decided weight of the evidence upon the question of alterations, as well as upon the construction placed upon

the contract by the parties, is clearly with appellee and against appellants.

The contract was executed on September 8, 1908, and according to appellant's contention, that it was a ninety-day option, expired on December 7th or 8th, 1908; but the evidence shows conclusively that, with the knowledge and consent of the appellants, appellee was making openings on the land and attempting to sell it under this contract in February, 1909, and that appellants told prospective purchasers, brought by appellee to inspect the coal under the land, that they had placed the land in the hands of appellee for sale and that whatever agreement or transaction of sale might be made by him would be satisfactory to them; and that afterwards when a sale was consummated by appellee, appellants, after having refused to carry out the contract, said they were willing for appellee to be reimbursed for the expense he had incurred and for the time he had lost in making the sale, but that they were unwilling that he should make as much off of them as they understood he was making in the sale. This is conclusive to our minds that the parties did not construe this contract to be a ninety-day option as now claimed by appellants, and with the other evidence for appellee, is more convincing than the evidence of Sophia Bowling that the contract was altered after its execution.

Much attention was paid upon the trial to the genuineness of the notary's acknowledgment of the contract and to an addendum attempting to extend its duration, but neither of these matters is material since the contract is as valid without an acknowledgment as with it between the parties, and the acknowledgment would have been important only for the purpose of determining whether or not the contract was a recordable instrument so that its recordation would give notice of its existence to third parties, which was immaterial here since the evidence proves that Stallard, the only person in this case entitled to such notice, had actual notice, and he is not appealing. However, it will be noticed, the certificate of acknowledgment seems to have been pretty well proven to have been signed by W. M. Bowling.

The attempted extension of the contract is equally as immaterial because the contract by its terms was in full force and effect at the time its validity is attacked in this action.

2. The other contention of appellants is that the contract is in fact an option to sell rather than a contract of sale. This contention is based upon the assumption that the parties by their construction recognized the contract, alleged to be ambiguous in its terms, to be merely an option, which, as seen above, is not supported by the evidence, and, that by the following clause, the contract shows that it was the intention of the parties when they executed it that it should be and was merely an option:

"All timber on the above tracts of land over 14 inches in diameter clear of bark is excepted and not conveyed in this contract, and if grantee takes and accepts this contract and takes said land the grantor shall have 90 days in which to brand the timber over 14 inches in diameter."

The contract as prepared by Mr. Flannery before it was taken to appellants for execution did not have this clause in it, but it was inserted by appellee upon agreement of the parties before the contract was executed. By the terms of the contract as prepared before hand, appellee was obligated to accept and pay for the land according to the agreement, if an abstract of appellant's title to the land disclosed a merchantable title, and the statement "if grantee accepts this contract and takes the land" in this clause we are considering with reference to the timber upon the land is not inconsistent with, and no doubt related to, appellee's right to refuse to take the land if it should develop appellants were not able to convey a good title, and being reasonably consistent with the other terms of the contract, it will not be so construed as to invalidate the express terms of the contract, as it is elementary that apparently repugnant clauses must be reconciled if it can be done by any reasonable construction.

Appellants to support their contention that the contract is an option rather than a contract of sale cite Litz v. Goosling, 93 Ky. 185, but the contract and facts before us are not similar to those involved in that case, while they are almost identical to those in the case of Northern Coal & Coke Co. v. Bates, 146 Ky. 624, where the contract was held to be a contract of sale.

The decision of the chancellor in refusing to cancel the contract, and dismissing the petition must therefore be sustained; and having dismissed the petition because appellants had not sustained the only grounds upon

which the invalidity of the contract was asserted, it results, of course, that a specific performance was properly adjudged upon appellee's counter-claim.

Wherefore the judgment is affirmed.