## Irwin v. Westwood Real Estate and Development Company, et al.

(Decided November 2, 1923.)

Appeal from Boyd Circuit Court.

1. Reformation of Instruments—Deed Reformed to Include or Exclude Land Omitted or Included by Mistake or Fraud.—A deed may be reformed by including land not described therein, or excluding land described in it, upon the ground that it was omitted or included by mutual mistake, or mistake of one of the parties and fraud of the other.

2. Reformation of Instruments—Relief Not Granted on Theory that Written Contract May be Altered by Parol.—Reformation of instruments does not proceed upon the theory that a written contract may be altered or modified by extraneous parol testimony, but upon the theory that equity will conform a written contract which fails to express the intention of the parties to the actual one entered into by the parties.

3. Reformation of Instruments—Proof of Mutual Mistake or Fraud Must be Clear.—To obtain reformation of an instrument proof of mutual mistake or fraud must be clear and convincing.

4. Reformation of Instruments—What is Clear and Convincing Evidence of Mistake or Fraud.—The clear and convincing proof required before an instrument will be reformed for mutual mistake or fraud is not confined alone to the express statements of witnesses, but may also be developed by the character of the testimony, the coherency of the entire case, and the documents, circumstances, and facts which are proved.

5. Reformation of Instruments—Clear and Convincing Proof does Not Mean that there Shall be no Conflict.—The rule requiring

clear and convincing proof of mutual mistake or fraud to entitle one to reformation of an instrument does not mean that there should be no contrariety in the proof.

6. Reformation of Instruments—Evidence Held to Show Either Mutual Mistake or Fraud and Mistake.—In an action for reformation of a deed, evidence held to show either a mutual mistake in omitting land or mistake on the part of plaintiff and fraud on the part of defendant.

7. Champerty and Maintenance—Conveyance of Lot in Adverse Possession of Another Champertous.—A deed to a lot which was at the time inclosed and in the adverse possession of a third party was champertous and void.

8. Vendor and Purchaser—Grantee with Notice Takes Subject to Third Person's Right to Reformation.—Grantee of a lot, who was aware of a mistake in a deed of a lot to another, and that such other was entitled to reformation of his deed so as to include his lot, takes subject to such third person's equity.

S. S. WILLIS for appellant.

R. D. DAVIS and W. D. O'NEAL for appellees.

Opinion of the Court by Judge Thomas—Reversing.

The appellee and defendant below, Westwood Real Estate and Development Company, owned some land near the city of Ashland which it purchased from different parties. It was platted into lots and streets and put upon the market. One of the parcels composing the plat was purchased by defendant from Adolph Henneman, which had been improved by the latter constructing a residence, some outbuildings and a well on it and a fence around it. On the plat made by defendant the Henneman parcel was in the corner of an alley running north and south and Wheatly street running practically east and west, as we gather from the plat, and it, as fenced and as formerly owned and occupied by Henneman, extended along Wheatly street 140.8 feet and along the alley 163 feet to another alley along its south line. There was an apple tree in the northeast corner of the Henneman lot and the recorded plat of defendant included other land belonging to it and purchased from other parties adjoining the Henneman lot on the east. The plat divided the ground on the south side of Wheatly street into lots 40 feet wide and extending from that street to the alley south of it, and there was platted a 40 foot lot off the east part of the Henneman lot, and known in this record as lot number 116, with the numbers increasing consecutively as the plat extended east.

On May 27th, 1917, the defendant sold two of the lots south of Wheatly street to Irene Montgomery and in the deed to her described those lots as numbers 117 and 118, the first of which, according to the plat, was immediately adjoining the Henneman property on the east, and at that time that property was fenced and the enclosure included lot number 116 on the plat, but Mr. Montgomery, who negotiated the purchase for his wife, testified in this case that when he was shown the property by defendant's agent there was a vacant 40 foot lot between the property he purchased and the Henneman property, and which vacant lot he did not purchase, although it was included in the deed executed to his wife, and was in fact lot number 117 on the plat. After that and on March 16, 1918, the defendant company sold to Milton Thompson and his wife, as they contend, all of the Henneman property which was enclosed at that time and which was shown and pointed out to them by defendant's president, Mr. Wheatly, before the purchase was made, but the enclosure at that time included lot number 116 on the plat. Thompson was to borrow some money from a building and loan association to pay the balance of the purchase price on the lot and by agreement the deed was delivered by Wheatly to the building and loan association and was never seen by Thompson, except he afterwards read the description contained in it when he executed the mortgage to the association to secure the loan, but he testified and the circumstances confirm him that at that time he did not know the extent of the boundaries of the Henneman property that had been shown to him and which he purchased. After Thompson obtained his deed his nephew, who was living with him, Beecher Wellman, purchased from defendant what he and Thompson supposed was lot number 117, located immediately east of the Henneman property and outside of its enclosure, and with the acquiescence of Wheatley and with the consent of Thompson the enclosure around that property was extended so as to include what was supposed by Wellman and Thompson to be lot number 117, and which was 40 feet east of the apple tree along Wheatly street. However, as we have seen, the lot of which Wellman took possession and which he included in the extended enclosure around the Henneman lot had been sold prior thereto to Irene Montgomery.

On May 16, 1920, Thompson and wife sold and conveyed the property they purchased to the appellant and plaintiff below, B. C. Irwin, and the description in his

deed was copied from Thompson's deed. Shortly thereafter plaintiff discovered that neither his nor Thompson's deed included in their descriptions lot number 116, and this equity action was filed by him to reform his deed so as to include that lot, and he alleged in his petition that it was the intention of defendant to sell it to Thompson as a part of the Henneman property and it was the intention of the latter to purchase all of that property including lot number 116, but by mistake or oversight on the part of both parties, or on the part of plaintiff and fraud on the part of defendant, it was left out of the description. The grounds for the relief were denied by the answer and after the pleadings were made and proof taken the court denied the relief sought and dismissed the petition, and to reverse that judgment plaintiff prosecutes this appeal.

That a deed may be reformed by including land not described therein or excluding land described in it upon the ground that it was omitted or included, as the case may be, by mutual mistake or mistake of one of the parties and fraud of the other, is a well settled doctrine in equity jurisprudence and has been uniformly recognized and applied by this court in numerous cases. Two comparatively recent ones, and in which many other prior ones are cited, are Scott v. Spurr, 169 Ky. 575, and Lamastus, et al. v. Morgan's Committee, et al., 178 Ky. 805. The relief does not proceed upon the theory that a written contract may be altered or modified by extraneous parol testimony, but upon the theory that equity will conform a written contract, which fails to express the intention of the parties for the reasons stated above, to the actual one entered into by them. In order, however, to obtain the relief the proof of the mutual mistake or fraud must be clear and convincing, since its purpose is to overcome the agreement as expressed in the writing. But the "clear and convincing proof" required before the relief be given, is not confined alone to the express statements of witnesses, but may also be developed by "the character of the testimony, the coherency of the entire case, the documents, circumstances and facts which are proven." Scott case, *supra.*

In this case Thompson and wife testified that Mr. Wheatly, the president of defendant, showed them the lot which they purchased and pointed out on the ground its boundaries, which he said included all of the Henneman lot as *then enclosed,* and told them that the north-

east corner was about at the apple tree, which was only about one foot in the enclosure and near the line of Wheatly street. Wheatly admits that he pointed out to them more ground than his subsequently executed deed included, but he, in an evasive manner, attempts to say that the boundary he pointed out did not extend to the east fence enclosing the Henneman property (so as to include all of lot number 116) but lacked some ten or more feet of it. Wellman says that after he purchased his lot, which he thought was number 117 and lying outside of the Henneman enclosure, he obtained the consent of Wheatly to extend the fence so as to include it. Montgomery testified that when he purchased the two lots for his wife in 1917, there was a 40 foot lot between those he purchased and the then enclosed Henneman lot, which space constituted the lot numbered 117 on the plat, and subsequently purchased by Wellman, as he thought, and of which he was put in possession. Besides, it was testified by Montgomery that the witness, Diederich, acting as the agent for the defendant, pointed out to him the boundaries of lots numbers 118 and 119 at the time he made the purchase for his wife and that it did not include lot number 117, and that is not seriously denied by Diederich.

The rule requiring "clear and convincing proof" necessarily does not mean that there should be no contrariety in the proof, for if it did the occasions for the application of the remedy would be rare indeed. We think the testimony in this case shows, as measured by that rule, either a mutual mistake in omitting from the Thompson deed lot number 116 on the plat, or that it was omitted through a mistake on the part of Thompson and wife and fraud on the part of Wheatly. That being true, plaintiff was entitled to a reformation of his deed as prayed in his petition, and the court erred in declining to do so.

The deed to Wellman of lot number 116 was clearly champertous and void, because that lot was at the time enclosed and in the adverse possession of Thompson. Moreover, if it had not been so, Wellman was aware of the mistake and of the right of Thompson to reform his deed at the time of his purchase, and would be subject to Thompson's equities. He was not, however, put in possession of that lot but of lot number 117, which, as we have said, was prior thereto conveyed to Mrs. Montgomery. He was made a party defendant in this action but did not answer nor was there any judgment fixing the rights be-

tween him and the defendant company, and this opinion is not intended and will not be construed as in any way affecting them.

Wherefore, the judgment is reversed with directions to enter a decree reforming the deed according to the prayer of the petition and for further proceedings consistent with this opinion.