# Trustees of the First Christian Church of Fort Thomas v. Macht.

(Decided March 22, 1929.)

WILLIAM U. WARREN for appellants.

WILLIAM A. BURKAMP and L. S. SHEPLER for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

Prior to May 27, 1926, appellee and plaintiff below, John Macht, owned lots Nos. 1, 2, 3, and 5 in the First subdivision of Fort Thomas Park in Ft. Thomas, Ky. On that day he conveyed to appellants and defendants below, as trustees of the First Christian Church of Ft. Thomas, Ky., lot No. 1, which was so referred to in the description contained in the deed, and which description also said: "Said lot fronts 50.98 feet on the westerly line of the Alexandria Turnpike, and extends back westwardly, between parallel lines, —— feet on the northerly line, and —— feet on the southerly line, and has a width 50 feet in the rear."

Plaintiff filed this equity action in the Campbell circuit court to reform the deed so as to exclude therefrom a narrow strip across the west end of the lot that he says was by mutual mistake omitted from the description and was not intended to be conveyed, but which was conveyed under the general designation in the deed of "lot No. 1" of the designated subdivision. Defendants denied the alleged mistake, and in every way possible resisted the reformation sought by plaintiff; but the court on final submission reformed the deed as prayed for in the

petition, and to reverse that judgment defendants prosecute this appeal.

Plaintiff had a residence building in which he resided on one of the other lots, which were contiguous, and had constructed a barn with a concrete basement and stone foundation, a small portion of which extended over on to the west end of lot No. 1. Some days prior to the above date of the execution of the deed the Rev. Robert Dickerson Harding began negotiations with plaintiff for the purchase of a lot upon which to construct a church building for a congregation that he proposed to organize, and both parties went upon the lot, but they differ as to what occurred at that time. Plaintiff testified that the length of the lot from east to west, as shown upon the recorded plat in the county court clerk's office, was greater than its actual length upon the ground, and that he on that occasion not only so informed Rev. Harding, but that he also stated to him that the ground proposed to be conveyed was the entire width of the lot, but did not include its rear portion that was occupied by the barn, and that he would measure on the ground the length of the lot he offered to convey, which he later did. The Rev. Harding admits going upon the ground with plaintiff, but testified that nothing was said by the latter to indicate that any exclusions were to be made from the west end of lot No. 1, but that, on the contrary, the entire lot was to be conveyed. After that, plaintiff testified that he drove his stakes so as to include the entire width of the lot and to extend back from the front on its north line 155 feet and its south line 164.35 feet. The lot fronted Alexandria highway on the east, and which runs in a diagonal course so as to make its south line longer than its north line.

On the Sunday following, two of the defendant trustees, with the Rev. Harding, again went with plaintiff on the lot, and the latter testified to about the same conversation previously had with the Rev. Harding, but the trustees testified that there was no mention of any driven stakes at that time, nor did they see any. At the appointed time for the preparation of the deed by the attorney selected by defendants, plaintiff appeared with his pencil outline showing the dimensions he proposed to convey, as above indicated, and which is in accord with his contentions in this action, and exhibited it to the parties present, including the attorney. The deed was then prepared, leaving blank spaces for the insertion of the lat-

eral lines of the lot after they should be accurately ascertained by a surveyor to be selected by the Rev. Harding, which he did on that same day, and the selected surveyor went upon the lot and found thereon the stakes hereinbefore referred to, and which, as located, excluded from the lot that portion on its west end now contended for by plaintiff as having been conveyed through mistake. The measured distances by the surveyor were 154.66 feet for the north line and 166.04 feet for the south line, and which excludes from the recorded plat of the lot a small part of its west end now occupied by plaintiff's barn.

Prior to the execution of the deed plaintiff informed the purchasers of an outstanding easement for the construction and operation of a street railway on 12 feet of the east end of the lot, and he did not propose to warrant the title to that portion. He finally agreed, however, to obtain a release of that easement, and $500.00 of the consideration was withheld until that release was obtained by plaintiff, which he later did, and then completed the conveyance according to his agreement, and collected the retained portion of the consideration. Plaintiff also agreed to remove the dirt for a basement under the entire church building free of charge, which he did.

It was also proven that the Rev. Harding, two days after the execution of the deed, prepared a circular letter to be sent to persons from whom he solicited funds in aid of the erection of the church, and in it he stated that the lot that had been purchased was 50 by 155 feet. The surveyor above referred to also stated that when he went upon the lot to do his measuring, he not only found the driven stakes as testified to by plaintiff, but that the Rev. Harding was also present, and the stakes indicating the quantity of land to be conveyed were discussed upon that occasion and in his presence, and to which he made no objection. During the examination of Rev. Harding, he stated that "one hundred and fifty feet back would be plenty for the church," and he also said that he so informed plaintiff, but that it was in connection with an effort to reduce the price, but which the latter would not do.

We are aware of the well-established rule requiring clear and convincing proof to sustain a reformation of a duly executed writing, and which rule has consistently been announced and applied by this court in numerous cases, none of which is it necessary to insert, since the

rule is without exception. In the case of Irwin v. Westwood Real Estate & Development Co., 200 Ky. 760, 255 S. W. 546, we approved the rule, but we likewise said in that opinion:

"The rule requiring 'clear and convincing proof' necessarily does not mean that there should be no contrariety in the proof, for if it did the occasion for the application of the remedy would be rare indeed." We furthermore said in that opinion that "But the 'clear and convincing proof' required before the relief be given, is not confined alone to the express statements of witnesses, but may also be developed by 'the character of the testimony, the coherency of the entire case, the documents, circumstances and facts which are proven.' "

The quotation in the excerpt was taken from the case of Scott v. Spurr, 169 Ky. 575, 184 S. W. 866, and announces a principle based upon common sense and of universal practice, since, if the relief could not be granted because the defendant contradicted the proof of the plaintiff in such a proceeding, then the remedy would be practically destroyed, for it is rarely, if ever, true that the defendant in such cases admits the mistake relied on by plaintiff for the relief, and it is only where the mistake is denied by defendant that resort to the court is had wherein it may be proven by the necessary quantum of testimony and the defendant be compelled to correct it. The express testimony given by the witnesses in this case, plus the "coherency of the entire case" and the "circumstances and facts which are proven," fully measure up to the "clear and convincing" rule required and applied in such cases. In the first place, the express testimony preponderates to sustain plaintiff as to his having staked the portion of the lot he intended to sell, and the circumstance of the uses of the church did not require a lot more that 150 feet deep, and the fact that plaintiff would destroy his somewhat costly barn if the entire lot was conveyed, strongly supports plaintiff's theory of the case. A strong coherent fact, also supporting that theory, is that, if defendants' contentions be true, there was no necessity of inserting the dimensions of the lot in describing it in the deed, since all that was necessary in that event would have been merely a conveyance of "lot No. 1 in the first subdivision of the Fort Thomas Park," a plat of which was on record in the county court

clerk's office, and such description would have conveyed that entire lot as laid off when the subdivision was made, regardless of its width or its length.

Another coherent fact was, that the lateral lines of the north and south boundary of the lot were left blank in the *particular* description inserted in the deed, but which, as we have seen, was all surplusage, if defendants' contention be true. Those blanks must be presumed to have been made for some purpose, and the testimony shows that the measurements were to be later ascertained and inserted in the deed, and a surveyor selected to make them did so, but did not report them, nor was he called on to do so, and they were never inserted as originally contemplated.

Defendants, however, contend that the reason why the blanks were left in the deed was that plaintiff contended that the lot was shorter than shown on the plat, and it was done for the purpose of ascertaining the exact length of the true lines, and not for the purpose of excluding any portion of the west end of the lot. If that contention be true, it was, as we have pointed out, entirely unnecessary, since a conveyance of the entire lot would have passed title to all of it, regardless of its length; but, if plaintiff's contention be true, and it was not intended to convey the portion of it occupied by his barn, it then became necessary to ascertain the length of the north and south lines of that portion he did intend to convey, and in that view of the case there was something to be accomplished by inserting the *particular* description, and also by leaving the blank spaces therein; but which, we repeat, was not true, if defendants' contention be correct.

Subsection 9 of rule III adopted by this court, and published in the last and preceding dockets, requires all clerks in making out transcripts of records for this court to index them in the manner therein pointed out, which requires, inter alia, "the name of each witness and the page on which his testimony begins." The clerk in making out this transcript violated the requirements of that subsection in more particulars than one, and he did not pretend to comply with the quoted requirements. The index that he did prepare only says: "Depositions for plaintiff," and cites the page of the transcript whereon they commence. The same is true as to the testimony of defendants, and, regardless of the number of persons whose depositions are taken for the respective sides, the

above is the only index referring to the beginning of the testimony of any witness. A compliance with that rule is of immeasureable service to this court, and we have had a number of occasions to admonish circuit court clerks of the importance of observing it. Because it was not done in this case, the clerk will not be allowed to collect $10 of the amount of his costs for making the transcript.

We conclude that upon the whole case the court properly adjudged a reformation of the deed, and the judgment is affirmed.