## Rose v. Lewis.

(Decided April 25, 1930.)

THEOBOLD & THEOBOLD and T. S. YATES for appellant.

COUNTS & JARVIS and WAUGH & HOWERTON for appellee.

Opinion of the Court by Judge Dietzman—Affirming.

This is an action brought by the appellee against the appellant to quiet his title to the oil, gas, and mineral rights under a described tract of land in Elliott county, and to correct the deed to that tract as recorded. The lower court awarded the appellee the relief he sought, and from that judgment this appeal is prosecuted.

The controversy turns on whether the deed, which the appellee made to the appellant covering the land mentioned, reserved all of the oil, gas, and mineral under the land conveyed or only one-eighth thereof. As recorded, the deed shows the reservation of only an eighth. The appellee contends and so testified that the deed as written, acknowledged, and delivered, reserved all of the oil, gas, and mineral and that it was so written, acknowledged, and delivered in accordance with the agreement of the parties theretofore made, but that after the deed had been executed and delivered, the appellant, without the knowledge, consent, or acquiescence of the appellee, changed it to read as it is recorded. The appellee had, prior to the making of the deed, executed a title bond for this property and the title bond as recorded reads in accordance with the way the deed is recorded. The appellee testified, however, that the appellant had also changed this title bond after it had been executed just as he had changed the deed. The appellee further testified that he

ascertained the fact of this change before he made the deed and that he went to see the appellant about it and that the latter, in the presence of three witnesses whom appellee produced and who corroborated him, admitted that he had changed the title bond but that he would correct it to read in accordance with the real agreement. The appellee also introduced the notary public who wrote the deed and who took appellee's acknowledgment to it and he testified that in the deed as written, acknowledged, and delivered, all of the oil, gas, and minerals was reserved. The appellee also introduced his brother who was present when the original agreement was made and he testified that by it, all of the oil, gas, and mineral was to be reserved. The appellant introduced himself, his brother, his brother-in-law, the county clerk and Estill Flannery. Appellant denied that there had been any change made in the deed as recorded, denied the alleged admissions on his part concerning the change in the title bond about which appellee and his witnesses had testified and denied that the original agreement was other than as written out in the deed. The county clerk could not recall whether the original deed which has been destroyed in a fire had any interlineations in it or not. Appellant's brother-in-law, who examined the deed for the purpose of running the title in connection with a loan the Federal Land Bank was making appellant, testified that according to his recollection there were no interlineations or changes on the deed, that attracted his attention or·gave him any concern. Flannery said he read the deed just after it was written and it conveyed all the minerals to appellant. This was more than appellant claims, as he admits appellee was entitled to one-eighth of the minerals. Appellant's brother did not read the deed but says he heard appellant and appellee talking about the trade and appellee was to get but one-eighth of the minerals.

Appellant's contention that the evidence warranting the correction of the deed before us, on the ground that it was altered after execution and delivery, must be clear and convincing, is sound. Bowling v. Bowling, 172 Ky. 32, 188 S. W. 1070. But, as in the analogous case of a reformation of an instrument for fraud or mistake, this does not mean that there shall be no contrariety in the evidence. In the case of Trustees of the First Christian

Church of Ft. Thomas v. Macht, 228 Ky. 628, 15 S. W. (2d) 509, 510, we said:

"We are aware of the well-established rule requiring clear and convincing proof to sustain a reformation of a duly executed writing, and which rule has consistently been announced and applied by this court in numerous cases, none of which is it necessary to insert, since the rule is without exception. In the case of Irwin v. Westwood Real Estate & Development Co., 200 Ky. 760, 255 S. W. 546, we approved the rule, but we likewise said in that opinion:

" 'The rule requiring "clear and convincing proof" necessarily does not mean that there should be no contrariety in the proof, for if it did the occasions for the application of the remedy would be rare indeed.' We furthermore said in that opinion that: 'But the "clear and convincing proof" required before the relief be given, is not confined alone to the express statements of witnesses, but may also be developed by "the character of the testimony, the coherency of the entire case, the documents, circumstances and facts which are proven." ' 

"The quotation in the excerpt was taken from the case of Scott v. Spurr, 169 Ky. 575, 184 S. W. 866, and announces a principle based upon common sense and of universal practice, since, if the relief could not be granted because the defendant contradicted the proof of the plaintiff in such a proceeding then the remedy would be practically destroyed, for it is rarely, if ever, true that the defendant in such cases admits the mistake relied on by plaintiff for the relief, and it is only where the mistake is denied by defendant that resort to the court is had wherein it may be proven by the necessary quantum of testimony and the defendant be compelled to correct it."

Applying these principles to the instant case, we are of the opinion that the chancellor did not err in granting the appellee the relief he sought.

The testimony of the notary public who wrote the deed and took appellee's acknowledgment to it, and who is not shown in any way to be an interested party, is very clear that all of the oil, gas, and mineral was reserved. This testimony is buttressed by that of appel-

56

lee's witnesses, who testified concerning the admissions appellant made about changing the title bond and by that of appellee's brother who was present when the trade between appellant and appellee was made. Opposed to this, we have the denial of appellant, the testimony of the county clerk which amounted to nothing, that of appellant's brother-in-law which was not inconsistent with the evidence of appellee, and that of Flannery and appellant's brother, the former of whom says he read the deed, and the latter of whom says he only heard appellant and appellee dickering for their trade. In the last analysis, appellant's case rests on the testimony of himself and Flannery. We have not overlooked the circumstance of this land being under an oil lease to the Superior Oil Company at the time of its sale by appellee to appellant, but the explanation of appellee as to why he let appellant have the rents arising out of this lease for the time being is not inconsistent with his claim of ownership in the minerals if the oil company, which had never developed the property and was only paying rent to hold the lease until development, should surrender the lease without development as it actually did soon after this trade between appellant and appellee was consummated. Appellant's case makes but little headway against the testimony of the notary who drew this deed, supported, as we have pointed out, it is. The proof justified the chancellor in entering the judgment he did.

That judgment is therefore affirmed.