## Blanton et ux. v. Blanton.

(Decided March 17, 1931.)

W. J. WARD for appellants.

FRED HOWES for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

Fonza Blanton and his wife, Verna Blanton, were the owners of a 26-acre farm lying on both sides of Garrett highway near Staffordsville in Johnson county. On October 4, 1928, they conveyed to Gardner Blanton all the farm except a small parcel 100 feet wide and lying south of the Garrett highway. The property conveyed was described by metes and bounds, and the omitted portion was excluded by running from Chester Griffith's line west along Garrett avenue for a distance of 260 feet instead of 160 feet.

This action was brought by the grantee, Gardner Blanton, to reform the deed on the ground that the parcel not conveyed was omitted from the description by fraud or mistake. Issue was joined, and on the final hearing the deed was reformed. The grantors appeal.

Gardner Blanton deposed as follows: Fonza and wife had been at him to buy the place for over a year. He told them he could not buy it at the price. Finally he agreed to look at the place. Fonza went with him around the whole boundary and showed him the line. On returning to the house Fonza priced it, and he told Fonza that he could not buy it. Fonza then told him to make an offer and he agreed to give $7,000 for the whole place with a clear title and the taxes and everything against it paid. After that they went to Paintsville and told Dave Dorton that he had bought the place. Dorton told him

to get Frank Chandler to draw the deed. Up to the time the deed was made nothing was said about reserving any part of the land. It was clearly understood that they were selling and conveying to him all that they owned at Staffordsville. After the deed was executed he discovered the mistake, and while on the stand described how the mistake occurred. He moved on the land November 24, 1928, and took possession of the 100-foot strip in controversy. There was a garage on the strip, and Fonza Blanton said he would have to store away that stuff there until he could get it away. Fonza moved it to one side and gave him the other side to put his car in. The next day he put his car in the garage. Fonza said that he wanted to store his articles in the garage for a few days until he could get away. Afterwards Fonza declined to get out and he notified him to move on several occasions. During the year 1929 he cultivated and used the entire strip as a garden, planting it in potatoes, cabbage, onions, tomatoes, and corn. Before he purchased the land his son-in-law, John D. Blanton, came to him to get him to buy the land. He told John D. that whenever he got down to about $6,000 or $7,000 he might talk to him about it. On cross-examination witness stated he was 76 years of age and had had some experience in buying and selling land, and in other business adventures. When Fonza produced his deeds he told them to make the deed, and Frank Chandler wrote it. He thought the deed was read over. He never caught the mistake at the time and never discovered it until Fonza told him. Before Fonza told him Fonza repeatedly promised to move his stuff out of the garage. When Fonza read the description from the three deeds to Mr. Chandler he relied upon Fonza to read the description correctly. Julius Burchett, who worked for Fonza Blanton, testified that after the sale he was down at the garage straightening it up and piling the stuff back in one end of the garage. Fonza told Uncle Bud (Gardner Blanton) that he would get the stuff out just as quick as he could and give him possession. In the year 1929 Uncle Bud raised a garden on the strip in controversy. Ernest Mahan testified that he heard Fonza say that he had sold out to Uncle Bud. Fonza said nothing about excepting or reserving anything from the deed. He was also present and heard Fonza tell Uncle Bud he would give him possession in a few days. John

D. Blanton the grantee's son-in-law, testified that he was acquainted with the land for about two years. For over a year Fonza and his wife had been telling him every few days that they wanted to sell it to Uncle Bud and wanted him to get Uncle Bud to buy it. Fonza was asking $10,-000 for it. Fonza did say that he would love to keep out the lot above the road and sell Uncle Bud the rest of it. He told Fonza that Uncle Bud would not buy part of it without buying all of it. At different times he had heard Fonza promise Uncle Bud to get his stuff out of the garage and move it away. Uncle Bud put his car in the garage and two or three days after he took possession of the place. Fonza's tools and appliances had been in the garage ever since the sale. It was understood between him, Fonza, and Uncle Bud that Fonza and wife were selling to Uncle Bud all the land they owned in that section.

Frank Chandler, assistant cashier of the Second National Bank of Paintsville, and notary public, testified that he drew the deed. When the parties came into the bank he discovered that the land had been sold in three tracts. He mentioned that he would draw the deed in three tracts, but Fonza said that they wanted it in one deed, and dictated the description. At the time Fonza had three deeds before him. His understanding was that Fonza was selling it all. Gardner Blanton was present at the time Fonza Blanton was calling the boundary line and interposed no objection. He did not remember whether the deed was afterwards read over or not. Gardner Blanton was considered a good business man. Gardner Blanton was a little deaf and you had to talk above the average tone of voice in order to make him understand. Assuming that Gardner Blanton bought all the land there was a mistake in the deed. If Fonza just sold the boundary described in the deed, there was no mistake. Being recalled, Gardner Blanton testified that his sense of hearing was impaired, and he did not hear distinctly the description dictated by Fonza, but relied upon Fonza to get the description right. D. H. Dorton testified that, when approached in regard to writing the deed, the impression he got from both parties was that Fonza was selling his entire farm. In his judgment Gardner Blanton had paid high for the farm. While Gardner Blanton's education was limited, he was considered a fair business man. Fred Meade, who drew a map of the land, testified that the 15-foot lane conveyed in the deed could not be used in connection with the remainder of the

land if the 100-foot strip were excluded. Gardner Blanton, after taking possession, used and cultivated the strip in controversy during the year 1929. Gardner Blanton was a man of meager education and hard of hearing.

Following the description contained in the deed are these words:

"Being the same land conveyed by Moses Tackett and wife, Talla Roberts to the grantors herein by deeds dated September 15, 1922, April 21, 1924 and April 27, 1925, and recorded in deed books No. 69, No. 74 and No. 74, at pages 218, 313 and 315, records of the Johnson county court clerk's office."

Fonza Blanton testified that he executed a deed for all the land that he sold to Gardner Blanton. He showed the grantee the line around the north side of Garrett avenue and priced it at $10,000 first. Finally, the grantee agreed to give $7,000. He told the grantee "running 260 feet up the Garrett Highway and then a straight line across the bottom to Fred Meade's line." He never sold the grantee all the land. He did not show him to run down to Crate Rice's line. He did not surrender possession of the strip. He told him that he could use the garage and keep his car in there if he would keep the door locked and not let people take his stuff out of the garage. He gave the grantee the key to one lock and retained the key to the other. His wife read the description in the deeds and he told them how to run the tract to get it all in one boundary. Gardner Blanton was seated on one side of the table and Chandler on the other. Gardner had been over the place. He was willing to pay the money back for the same land deeded to Gardner. There was no mistake in the boundary. He had no recollection of telling Julius Burchett that he would move the stuff out of the garage and surrender it to Gardner, nor did he have any recollection of mentioning it to Ernest Mahan. All that he had told them was to straighten up the stuff so that Uncle Bud could get room enough to get his car in. He reckoned Gardner understood about not conveying the 100 feet, as he said, "Running 260 feet up the road and across the bottom." He thought it was well understood that there were 100 feet that Gardner was not getting. At no time did he promise to give Gardner possession of the garage. At the time he first asked $10,000 for the land he did not show the land to Gardner. Gardner said he would come back and look at it. They traded

when he came the second time. He did not show Gardner the whole lot. The 100-foot strip was not mentioned in the talk. He just showed Uncle Bud 260 feet up the right of way and then across it. At the time he made the $8,000 proposition he did not take Uncle Bud to the Crate Rice line. He told him it was to reach 260 feet on the south side of Garrett avenue. Uncle Bud said that he would give $7,000 for the land he showed him, and he showed him the land deeded. All that was explained about the 100-foot strip was the 260 feet that he was to have. He showed him 260 feet up the highway. They never measured the 260 feet or placed any monument there. Verna Blanton testified that she read over the description in the deed at the time it was made, and that any one in the room could have heard her. Mose Tackett testified that Fonza Blanton offered to sell him the land two or three different ways. J. H. Cantrill gave it as his opinion that Fonza Blanton could not read. W. R. Rice never heard Fonza read any, and Fonza said that he could not read.·

In rebuttal Gardner Blanton denied that Fonza told him he could keep his car in the garage if he would keep the door locked and not let people carry off the stuff. He also stated that Fonza never showed him anything about the 260 feet and never at any time intimated that he was keeping out any of the boundary of the land. Afterwards Fonza was again introduced and deposed that he discussed with Uncle Bud that he wanted to keep out a 100-foot lot across the bottom. He further testified that he had driven a stake at the end of the 260 feet and had measured it.

Appellants argue that the foregoing evidence is not sufficient to meet the requirements of the rule that to reform a written instrument on the ground of fraud or mistake the evidence must be clear and convincing. That such is the established rule there can be no doubt. Litteral v. Bevins, 186 Ky. 514, 217 S. W. 369. But as has been pointed out in numerous cases, this does not mean that there shall be no contrariety in the evidence. Rose v. Lewis, 234 Ky. 53, 27 S. W. (2d) 413; Trustees First Christian Church of Ft. Thomas v. Macht, 228 Ky. 628, 15 S. W. (2d) 509. With these rules in mind, let us examine the evidence. As to what occurred at the time the sale was agreed on we have appellee's evidence that he was shown and purchased the entire farm and nothing was said about reserving the 100-foot strip, coupled with

the evidence of his son-in-law that he told appellants that appellee wanted the whole farm or nothing. On the other hand, appellant Fonza Blanton admits that nothing was said about reserving the 100-foot strip, but says that he told appellee ''running 260 feet up Garrett Highway and then a straight line across the bottom to Fred Meade's line.'' He further says that this was about all the conversation, and also admits that there was no corner or stake at the end of the 260-foot line indicating the line that ran from that point. Moreover, when the parties met to prepare the deed, appellants produced three deeds and said that they wanted it in one boundary. Thereupon Fonza read the deeds off and dictated the description and Chandler wrote the description as called off by Fonza. Nothing was then said about any reservation. Though the point is stressed that the deed was read over in the presence of appellee, he says that he did not catch the mistake, and that is not surprising, inasmuch as he had a right to rely on the assumption that the description would cover the land embraced in the three deeds, especially in view of the fact that the description ended with these words: ''Being the same land conveyed by Moses Tackett and wife, Talla Roberts to the grantors herein by deeds dated September 15, 1922, April 21, 1924 and April 27, 1925, and recorded in deed books Nos. 69, 74, 74, at pages 218, 313 and 315, records of the Johnson county court clerk's office.'' Not only so, but the subsequent conduct of the parties is confirmatory of what was intended. If it had been the intention of the parties to exclude the 100-foot strip, no reason is perceived why appellants should have stored their implements in a portion of the garage and have turned over the remaining portion to appellee. But even if we go further and assume that that was a mere neighborly act and not inconsistent with appellants' claim that the 100-foot strip was not sold, it was clearly inconsistent with that claim to permit appellee to take possession of the strip and use it for garden purposes in the year 1929. In addition to this, there is one other fact of strong probative effect. By the conveyance appellee was ''to have the 15 foot lane out to the old road leading across Paint Creek along by the back of Crate Rice lot.'' This lane is used in connection with the 100-foot strip, and is of no value whatever if the 100-foot strip be excluded. When the case is considered in the light of all the facts, including the conduct of the parties, it is clear we think that

the sale embraced the entire farm, and that through fraud or mistake the description, which was intended to cover the land embraced in the three deeds, was dictated in such a way as not to include the 100-foot strip. It follows that the chancellor's decision was proper.

Judgment affirmed.