## Maupin v. Sumpter.

December 7, 1948.

J. S. Fullerton for appellant.

E. Poe Harris for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SIMS—Affirming.

Appellant, Harry Maupin, brought this action against appellee, W. A. Sumpter, to recover $1500 damages for an alleged breach of contract by Sumpter in

failing to convey to Maupin a house and lot in Ashland, in conformity with their written agreement. In his answer and counterclaim Sumpter averred his willingness to comply with the true contract but pleaded there was a mutual mistake in the contract as drawn and it did not contain the true agreement of the parties, and asked that it be reformed.

The cause was transferred to equity and referred to the master commissioner to hear proof on the question of reformation of the contract. After hearing considerable proof and viewing the premises, the commissioner filed a full and well-considered report wherein he recommended that the chancellor reform the contract. Maupin's exceptions to the commissioner's report were overruled, the chancellor entered judgment in conformity therewith, and Maupin appeals.

Maupin, as a seventeen year old boy in 1940, had been employed by Sumpter and suffered the loss of an eye in an accident. He sued Sumpter for $20,000 damages and on March 12, 1940, that suit was settled by a written contract wherein Sumpter agreed to convey Maupin "a certain tract of land agreed upon between the parties hereto and being the southeasterly part of Lot No. 2 Linwood Subdivision as shown on the map of the same recorded in Deed Book 88, page 543 and Lot No. 14 Hudgins, Stephenson & Sparks addition to Pollard as shown in plat recorded in Deed Book 78, page 441, the foregoing tract of land having no improvements thereon and to be determined more definitely from a survey to be made, and to construct thereon a building according to the plans and specifications attached hereto and made part hereof."

The answer and counter-claim admits Sumpter entered into the contract of settlement with Maupin, but avers that the true agreement between them was not that he would convey to Maupin the property described in the preceding paragraph, but was that the house be built immediately upon a lot 50 feet by 50 feet which would include portions of lot No. 2 and the adjacent lot, and deed was to be made and delivered to Maupin after this 50 foot lot was surveyed. Sumpter asked that the contract be reformed to meet the agreement the parties had made.

The small house specified was soon thereafter built and immediately occupied by Maupin and his father and has been in Maupin's possession ever since. However, Sumpter failed to have the lot surveyed and never executed a conveyance to Maupin but in his answer and counterclaim he tendered a deed to Maupin conveying the house and a lot 50 feet by 50 feet, which his pleading averred was the size lot the parties agreed upon, but by mutual mistake of the parties it was described in the contract as the southeasterly part of lot No. 2 and lot No. 14. The real controversy between the parties as developed in the proof, is the size of the lot Sumpter should convey to Maupin in conjunction with the house.

A court of equity will reform a writing where there is mutual mistake, or a mistake on the part of one party and fraud on the part of the other, so it will express the actual agreement of the parties. The burden is on the one seeking reformation to establish the mutual mistake, or fraud, by clear and convincing evidence. Litteral v. Bevins, 186 Ky. 514, 217 S. W. 369; Mayo Arcade Corp. v. Bonded Floors Co., 240 Ky. 212, 41 S. W. 2d 1104. Appellant insists that as there is a direct conflict in the testimony in the instant case, equity will not grant a reformation even though a preponderance of the evidence supports appellee's averment that the contract contains a mutual mistake of the parties, citing Payne v. Sebree, 14 Ky. Law Rep. 862; Stockhoff & De Witt v. Brannin, 14 Ky. Law Rep. 717, and the Litteral case.

The Payne and Stockhoff opinions only hold a reformation may not be had "upon a mere inference from the weight of the evidence" but that the ground for reformation must be established by clear and satisfactory proof. However, it was written in Litteral v. Bevins, 186 Ky. 514, 217 S. W. 369, 370, "A direct conflict of testimony is conclusive against the reformation of an instrument." That opinion then quotes from Griffith v. York, 152 Ky. 14, 153 S. W. 31, in the course of which this language is used: "Where the evidence is conflicting, the relief will not be granted, even though a preponderance of the evidence supports the allegation of mistake. Payne v. Sebree, 14 Ky. Law Rep. 862." The broad statement in the Litteral opinion that a direct conflict in the testimony is conclusive against the refor-

mation of an instrument is not supported by the quotation in the Griffith case. Indeed, the Griffith opinion closes by saying, "There is some evidence supporting the contention of appellant that no mistake was made in the preparation of the deeds; but from the testimony * * * it is apparent that a mistake was made." There, the contract was reformed.

We have many times written after the Litteral opinion came down that the rule requiring "clear and convincing proof" does not mean there should be no contrariety in the evidence, else no contract could ever be reformed if there was a conflict in the proof. Irwin v. Westwood Real Estate & Development Co., 200 Ky. 760, 255 S. W. 546, 547; M. P. Brothers Co. v. Kirkpatrick, 214 Ky. 560, 283 S. W. 424; Trustees First Christian Church v. Macht, 228 Ky. 628, 15 S. W. 2d 509; Sheppard v. Koch, 234 Ky. 1, 27 S. W. 2d 389; Rose v. Lewis, 234 Ky. 53, 27 S. W. 2d 413; Glass v. Bryant, 302 Ky. 236, 194 S. W. 2d 390; Hyden v. Grissom, 306 Ky. 261, 206 S. W. 2d 960.

We do not mean to say that where the evidence is highly or directly conflicting a reformation will be declared upon a preponderance of the evidence, as a reformation can only be had where the mistake or fraud is proven with reasonable certainty; but the fact that there is a conflict in the evidence does not prevent it from being clear and convincing. Insofar as Litteral v. Bevins, 186 Ky. 514, 217 S. W. 369, conflicts with this opinion, it is overruled.

As is not unusual, there is some conflict in the testimony as to whether the parties agreed that the lot upon which the house was to be situated was to be 50 feet by 50 feet, or whether it was the southeasterly part of lot No. 2 and all of lot No. 14. Maupin and his father, who acted for his son in settling the damage suit, testified that in arriving at that settlement nothing was said about the lot being a 50 foot lot. John Vigor, who drew the settlement contract as Sumpter's attorney, testified that if the parties to the contract agreed that the lot was to be 50 feet by 50 feet, he did not know it; but he admitted that the description in the contract was indefinite.

Sumpter and his uncle, R. L. Sumpter, both testified

that it was not only agreed the lot was to be 50 feet by 50 feet but it was so marked off in 1940 in the presence of appellant and his father. Appellee further testified that the part of lot No. 2 facing on the street was not 50 feet wide and he knew to get a lot of that width for the house some small part of the adjoining lot, which he then thought was lot No. 14, would have to be included.

The map filed in the record shows that lots No. 14 and No. 2 do not adjoin, but are separated by a wedge-shaped lot. Appellant testified that if lots No. 2 and No. 14 were not adjacent, then the contract did not clearly set out the agreement. This testimony of appellant shows a need for reforming the contract, since the two lots were not adjacent. While Sumpter owned both lots No. 2 and No. 14, the latter was not a vacant lot, as called for in the contract, and had a large building on it in which he manufactured concrete blocks. Also, Sumpter, during all of the interim from 1940 until this suit was brought, used this lot for the storage of concrete blocks, lumber and other materials. Although Maupin lived within 70 or 75 feet of this concrete block factory, where his father worked, he never complained until this suit was filed that Sumpter was occupying and using this lot. Furthermore, Maupin or his father obtained permission from Sumpter to erect a privy on and to cultivate lot No. 14.

This evidence is sufficiently clear and convincing to show with reasonable certainty that the parties to this contract never agreed that Sumpter was to convey to Maupin the southeasterly part of lot No. 2 and all of lot No. 14 for the erection of this small house 20 feet by 16 feet; but that the size of the lot they agreed upon was 50 feet by 50 feet. The evidence abundantly supports the chancellor's finding that the contract should be reformed so as to conform to the true agreement of the parties as to the size of the lot.

The judgment is affirmed.