## Griffith v. York

(Decided February 4, 1913.)

Appeal from Lawrence Circuit Court.

1. Reformation of Instruments—Right of Action and Defenses—Grounds of Reformation.—Mistake of Fact.—Where a mistake has been made by the draftsman, in the preparation of a deed, equity will afford relief by directing the reformation of the instrument so as to carry out the intention of the parties.

2. Reformation of Instruments—Proceedings and Relief—Evidence.—Relief against mistake will not be granted, unless the mistake is

established by clear and convincing evidence; nor will it be granted where the evidence is conflicting, even though the preponderance of the evidence supports the allegation of mistake.

3. Reformation of Instruments—Evidence—Weight and Sufficiency.— Evidence held to justify finding that deeds, by mistake of the draftsman, do not express the intention of the grantor; and to support holding directing their reformation in accordance with such intention.

G. W. SKAGGS and W. D. O'NEAL, Jr., for appellants.

M. S. BURNS and W. T. CAIN, for appellees.

OPINION OF THE COURT BY JUDGE LASSING.—Affirming.

James Carpenter owned a small farm on Choice Lick branch in Lawrence County, Kentucky. The branch divided the farm, throwing about one-forth thereof on one side; and three-fourths on the other side. He had two children, one of whom married Reuben York and some time prior to 1903 died, leaving three infant children. The other married Harmon Griffith. James Carpenter died in 1907, leaving surviving him his widow, Mary Carpenter, his daughter, Laura Belle Griffith, and the three infant children of his deceased daughter. It appears that on the 29th day of June, 1903, James Carpenter executed two deeds, by which he disposed of his entire estate. In one of said deeds he gave to his daughter, Laura Belle Griffith, all of the land on one side of the creek and excepted therefrom the house, garden, barn, barn-lot and the upper hollow field. These were reserved during the natural life of himself and his wife, Mary, or if she survived him, so long as she remained his widow. The other deed was made to his wife, Mary Carpenter, and it appears that, in this deed, she was given the fee to the remainder of his land, which lies across the creek from the portion conveyed to Laura Belle Griffith. Following his death, a suit was instituted by his three infant grandchildren, through their father, William York, in which they alleged that, by mistake of the draftsman, the deeds above referred to had deprived them of any interest whatever in his estate; that he was an ignorant man, unable to read or write and relied wholly upon the draftsman of these deeds to express and carry out his intention; and that his purpose in making said deeds was to invest his daughter, Laura Belle Griffith, with the title to all of the land on the east side of said branch, save the excepted portions referred to in the deed, and to invest his grandchildren

with the fee to the remainder of his land, reserving a life estate in the portion thereof intended for his grandchildren, for the benefit of himself, and also for the benefit of his wife, if she survived him and did not remarry. They asked that the deeds be reformed so as to carry out this intention. The defendants answered and denied that there was any mistake in the draft of the deeds. Upon this issue, proof was taken. The widow, in her deposition, admitted that, so far as she was concerned, her husband intended for her to have merely a life estate in the property, if she survived him, which should be terminated upon her marrying again; and that, as to the deed made to his daughter, Laura Belle Griffith, his purpose was to give to her the fee to all of the property described in her deed, save the excepted portion, and that the property on the opposite side of the branch was to go to the plaintiffs, his grandchildren. Upon consideration of the case, the chancellor was of opinion that the plaintiffs were entitled to the relief sought, and so adjudged. Laura Belle Griffith and her husband appeal.

It is well settled that, where a mistake has been made by the draftsman, in the preparation of a deed, equity will afford relief by directing the reformation of the instrument so as to carry out the intention of the parties. Nutall v. Nutall, 26 Rep., 671; Dean v. Hall, 31 Rep., 1306. But, in order to entitle one to relief of this character, the evidence, by which the alleged mistake is established, must be clear and convincing. Whitt v. Whitt, 145 Ky., 367. Where the evidence is conflicting, the relief will not be granted, even though a preponderance of the evidence supports the allegation of mistake. Payne v. Sebree, 14 Rep., 862.

Measured by these established rules, does the evidence in the case at bar uphold the finding of the Chancellor? The grantor, at the time the conveyances in question were made, was advanced in years and evidently desired to divide his property between his child and grandchildren, while he was living. Upon this point, there is no room for contrariety of opinion, when the entire record is considered. He wanted his daughter, the appellant, to have the greater part of that portion of his farm lying upon that side of the creek, upon which his dwelling and buildings, appurtenant thereto, were situated. It is also equally clear that he wanted his

grandchildren to have that portion of his farm, lying on the opposite side of the creek. He was likewise making such provision that he would have a home for himself, during his lifetime, and his wife, after him, if she survived him and remained his widow. In order to effectuate this latter purpose, he reserved out of the conveyance to his daughter, the ground upon which the dwelling and buildings, appurtenant thereto, stood, together with a certain part of the land. All are agreed that this reservation was made for the benefit of himself and wife; but, it is insisted for appellants that, after his death and the death or marriage of his widow, the fee to these reserved portions passed to and vested in appellant. The evidence shows that, including the dwelling and outbuildings, appurtenant thereto, the land on that side of the creek was worth $250.00; whereas, the land on the opposite side was worth but $75.00; and that when the excepted portions on the side of the creek conveyed to his daughter are valued and added to the value of the land on the opposite side of the creek, the two parcels are about equal in value. There is not an intimation in the record that the grantor desired to show any partiality, in the division of his estate between his daughter and his grandchildren. Presumably, they were equally near and dear to him. And the fact that the division, as claimed by appellees, if carried out, would have made them practically equal, is a circumstance in favor of the contention that he desired the deeds so written as to divide the land in this way. Much reliance is had by appellants upon the testimony of the deputy clerk, who prepared these deeds and took the acknowledgment. He testifies that they were drawn under the direction of the grantor; that, after they were drawn, they were read over to him, and he stated that they were as he desired them; yet, it is apparent from the record, as they were prepared by this deputy clerk, the grandchildren were deprived of all interest in the grantor's estate, for by one deed all of the land lying on one side of the creek was conveyed to appellant, reserving to the grantor a life interest in certain portions thereof, while that on the other side of the creek was conveyed to his wife absolutely, no mention being made in either of his grandchildren. Manifestly, from the overwhelming weight of the testimony, the grantor did not purpose to make this disposition of his property. He was an ignorant, uneducated, old man,

possessing the ability to neither read nor write; and, in the disposition which he was making of his property, he was evidently relying wholly upon the deputy clerk so to prepare the deeds as to carry out his intention. His wife was perhaps better acquainted with his purpose than any one else, and certainly in a position, better than any one else, to know what disposition he desired to make of his property. She says that it was to give all of that lying on one side of the creek to his daughter, save certain excepted portions, which were reserved for himself during his life, and after his death, to her during her life or widowhood, with remainder in these excepted portions to his grandchildren; and that his grandchildren were to have that tract lying on the other side of the creek, subject to the same uses for the benefit of himself and wife. Katie Osborne, a lady who lived with him several years before his death, testifies that he told her that he wanted the property to be divided in the same way, but that by a mistake the deeds had not been drawn as he wanted them. George Pack testifies that the deeds were not written as the grantor directed; that after they were written, they were not read over to the grantor; and that the deputy clerk, some time after the deeds were written, told him that he had made a mistake in the draft of deeds. Walter Lester testifies that he was present at the time that the deeds were being written, and that the deed to appellant was not written as the grantor directed it to be written; and that he heard the grantor tell Mr. Adams, the deputy clerk, to so write the deeds as to give his daughter all of the land on one side of the creek, save certain excepted portions; that these were to be for the benefit of himself and wife during their lives, or her widowhood after his death, and then to go to the York children. H. H. Caudill testifies that the deeds were not made in conformity with the expressed intention of the grantor, as he gathered from a conversation with him some time before they were prepared.

There is some evidence supporting the contention of appellant that no mistake was made in the preparation of the deeds, but, from the testimony of the witnesses to which reference has been made, it is apparent that a mistake was made; and that the deed to appellant, on account of said mistake, gave to her, after the expiration of the life estates therein, the excepted portion of

the land on that side of the creek, whereas the grantor intended it to go to his grandchildren. This being true, the chancellor correctly held that the deed must be reformed.

Judgment affirmed.