## Staib v. German Insurance Bank.

(Decided February 5, 1918.)

### Appeal from Jefferson Circuit Court.

1. Husband and Wife—Guaranty or Suretyship.—Under the provisions of section 2127 of the Kentucky Statutes a married woman's property will not be subjected to the payment of a debt contracted by her as surety for her husband or another unless it shall have been set apart for that purpose by a deed of mortgage or other conveyance. But it is not necessary that the purpose for which the property is set apart by the wife be stated or contained in the writing, it being sufficient that the setting apart be evidenced by the conveyance or other instrument executed by the wife.

2. Husband and Wife—Setting Apart Property.—Where the wife, in order to secure a debt for her husband, endorsed in blank the certificate of stock held by her in a corporation and delivered it to her husband for the purpose of having him pledge it for his debt which he did with knowledge on the part of the creditor of the purpose of the wife's endorsement: Held that this was a sufficient setting apart of her property as required by the statute.

3. Principal and Surety—Indulgence to Principal.—While an extension of time to the principal without the knowledge or consent of the surety will discharge the latter from the obligation, for the extension to have this effect it must be based upon a sufficient consideration so as to be enforceable between the principal and the creditor, and if it is merely an indulgence without any consideration it will not have the effect to release the surety, although the extension may be evidenced by the execution of a new note.

GRUBBS & GRUBBS for appellant.

WEHLE & WEHLE for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On and prior to July 13, 1915, J. Lewis Staib, husband of appellant and defendant below, was indebted to appellee and plaintiff below, German Insurance Bank, in the sum of $8,829.52, evidenced by various notes, and on that day he renewed all of his indebtedness to the plaintiff by executing to it one note for the entire sum due four months afterward. To secure it he and his wife, the defendant, executed a mortgage to the plaintiff bank on certain lots in the city of Louisville, some of which he owned, while his wife owned the others. The real estate was not deemed sufficient security by the bank and it demanded more, resulting in pledging to

the bank as further security 66 shares of the capital stock of the Louisville Bridge & Iron Company, a corporation doing business in the city of Louisville. Three of the shares were held by the husband as his property, the certificates for which had been issued to him, while the other 63 shares were issued to and held by the wife. But on the day before the date of the note (July 12, 1915) defendant signed a blank endorsement on the back of the certificate for the shares which she held in her name with the view and purpose that the husband might use the stock as collateral to a note to be executed by him in extending his indebtedness. The endorsement which the defendant so signed is in these words: "For value received the undersigned hereby assign and transfers unto _____ shares of the capital stock of the Louisville Bridge & Iron Company, and do hereby constitute and appoint _____ true and lawful attorney irrevocable for and in name and behalf to make and execute all necessary acts of assignment and transfer required by the regulations and by-laws of said company.

"In witness whereof I have hereunto set my hand and seal this 12th day of July, 1915. Nettie N. Staib. In presence of Alice Puddefoot."

Before the maturity of the note it was credited by $72.00, leaving a balance of $8,757.52 wholly unpaid at the date of maturity, November 13, 1915, on which day a note for that sum was executed by the husband to the plaintiff due sixty days thereafter.

Upon the day of the execution of the first note for $8,829.52, the husband executed a separate writing setting forth the collateral pledged as security, which was taken in addition to the mortgage, the stock as well as the first note being retained by the bank as collateral to the renewal note. After the latter became due, and being unpaid, this suit was brought against appellant and her husband for the purpose of obtaining a judgment against the latter for the amount of the debt, and to foreclose the mortgage lien upon the real property and a sale of the stock which had been pledged as collateral to the note. The real estate was sold, but did not realize enough to pay the debt, and the wife is resisting the appropriation of the stock upon the ground that it was her property and that it could not be pledged as security for her husband's debt except in the manner pointed out

by section 2127 of the Kentucky Statutes, which she insists was not complied with in this case, and that her stock is not bound for any portion of the debt.   Upon trial, the court below overruled the wife's contention and entered judgment subjecting the stock to the payment of the balance of the debt, and to reverse that judgment she prosecutes this appeal.

The part of the statute applicable to the question raised reads: "No part of a married woman's estate shall be subjected to the payment or satisfaction of any liability, upon a contract made after marriage, to answer for the debt, default or misdoing of another, including her husband, unless such estate shall have been set apart for that purpose by deed of mortgage or other conveyance."

A most vigorous insistence is made that inasmuch as there is nothing in the signed endorsement to show the *purpose* which the wife had in view and intended to accomplish thereby, the statute has not been complied with and there was consequently no lien created upon her stock.   In other words, it is insisted that the intention of the statute and the purpose which the legislature had in view was to require, before a married woman's property could be pledged as security for the debt of another, that she should both *set it apart* and *express her purpose* in doing so by some kind of writing; i. e., that both the setting apart and the purpose must be shown by written proof, and neither of them can be established by parol proof.   Counsel for plaintiff insists that all the statute requires is that the *setting apart* by the wife shall be evidenced by writing, and the purpose for which such setting apart was made is capable of being established by parol proof.   An additional insistence by plaintiff's counsel is that if he is mistaken in his interpretation of the statute the judgment is correct, because the wife constituted her husband her agent to carry out the purpose of her endorsing the stock, which he did in the writing he executed in pledging the stock as collateral to the note.   In support of appellant's contention we are referred to the following cases from this court. Wirgman v. Miller, 98 Ky. 620; New York Life Insurance Co. v. Miller, 56 S. W. R. 975; Hart v. Bank of Russellville, 127 Ky. 424; Swearingen's Ex'r v. Tyler, 132 Ky. 453, and Third National Bank v. Tierney, 128

Ky. 836; but an examination of those cases does not convince us of their relevancy to the facts of this case.

The principal question dealt with by them is whether the debts involved were those of the wife as principal, or whether she had attempted to become liable only as surety for her husband or another. It is recognized in all of them that the wife can not become personally liable as surety on a note, even that of her husband, and that to reach her property for the debt of her husband or another she must have set it apart for that purpose in the manner required by the statute. So that when we analyze those cases, we find nothing, as we view them, to assist us in the determination of the question here presented, which is the proper interpretation of the clause "unless such estate shall have been set apart for that purpose by deed of mortgage or other conveyance," found in the statute.

The effect of the statute which was enacted by the legislature in 1894 was to enlarge the rights and powers of a married woman concerning her property, both real and personal, and to curtail the rights of the husband therein which had theretofore existed by virtue of the marital relation. But, as we understand, there was no substantial change made concerning the power of the wife to subject or place in lien her property for the debt of another. It was evidently the purpose of the legislature in the enactment of the law to provide that there should be no appropriation (setting apart) of a married woman's property to the payment of another's debt where the fact of appropriation by her rested only in parol proof; but on the contrary that such appropriation (setting apart) must be done and evidenced by some kind of solemn act of no less dignity than a writing suitable for the purpose of creating such "setting apart." When the transaction furnishes such written proof of the "setting apart," it would seem that the purpose of the statute was accomplished without the additional requirement (which appellant insists upon) that the reason or *purpose* which the wife had in mind when she executed the writing should also be expressed in it. By "setting apart" her property it is evidently contemplated by the statute that the wife should part with title to and dominion over the property to the extent that it has been set apart. This may be a parting by her with the entire title, as in the case of a sale and

transfer, or it may be only a *pro tanto* parting with the
title, as in the case of the creation of a lien; but in
either case the parting with the title by her (setting
apart) must be in writing. Suppose the clause of the
statute under consideration should be transposed so as
to read, "unless such estate shall have been set apart by
deed of mortgage or other conveyance for that pur-
pose;" or, "unless for that purpose such estate shall
have been set apart by deed of mortgage or other con-
veyance." These transpositions would seem to draw out
the meaning intended to be conveyed by the legislature
without mutilating the statute in any way, or altering its
evident purpose, and at the same time to make plain the
import of the language. If it had been the intention of
the legislature to require that both the *setting apart*
and the purpose should be contained in the "convey-
ance" or in the writing executed by the wife, it could
have unmistakably done so by saving "unless her pur-
pose to do so is expressed by deed of mortgage or other
conveyance." This would have required both the *pur-
pose* and the *setting apart* to be evidenced by a writing,
as the former could not have been contained in the writ-
ing without it also including the latter.

There is nothing to be found in any of the authorities
referred to from Kentucky, militating against what we
have said, since the direct question under consideration
was not presented. Nor do we find that the cases of
Moeckel v. Heim, 46 Mo. App. 340; McGuire v. Allen,
108 Mo. 403; Case v. Espenschied, 169 Mo. 215; France
v. Nirdlinger, 41 Ohio State 298, and Walter v. Bristol,
125 N. C. 419, hold to a contrary doctrine. The statute
under consideration by the court in each of those cases
contained different phraseology from that found in our
statute, in that the language employed expressly re-
quired the purpose of the wife in setting apart her prop-
erty for the purposes intended to be expressed in the
writing by which she set it apart. For instance, the Mis-
souri statute, which the court of that state had under
consideration in the cases, *supra,* permitted the husband
to acquire title to the wife's personal property which
he had reduced to his possession "with express assent
of his wife. . . . But the same shall remain her
separate property, unless *by the terms* of said assent,
*in writing,* full authority shall have been given by the
wife to the husband to sell, encumber, or otherwise dis-

pose of the same for his use and benefit.'' It will be observed that not only must the wife give her assent in writing authorizing the husband to encumber her property, but the "terms of said assent" must be contained in the writing, and the same is substantially true as to the Ohio and North Carolina statutes.  From this it is seen that the statutes of those states are not only broad enough to require the purpose of the setting apart of the property to be stated in the writing, but the language is incapable of any other construction, and is substantially as if their statute had read "unless her purpose to do is expressed by deed of mortgage or other conveyance," as hereinbefore shown in our illustration.  In that case there could be no avoiding of the construction adopted by the court in the cases referred to.

But it is insisted that the blank endorsement on the back of the stock is not a sufficient "setting apart" of the stock, as is required by the statute.  That act, as the statute requires, must be done by "deed of mortgage or other conveyance."  Manifestly any writing sufficient to constitute a conveyance of the entire property sought to be set apart would sufficiently comply with the statute, and authorities are abundant to the effect that the execution of such an endorsement on stock certificates is sufficient to constitute a conveyance of the stock to the holder, or the one whose name might be inserted in the blanks.  Cook on Corporations, Vol. 2, Sec. 441, and 10 Cyc., pages 594-595.  If, therefore, the endorsement here in question was sufficient to convey the entire property represented by the stock certificate, *a fortiori* it would be sufficient to convey a less interest under the axiomatic principle that the greater includes the less, or the whole includes all of the parts.  It is said, however, that the bank had knowledge of the circumstances and conditions under which the endorsement was made, as well as the purpose for which it was made, and that it therefore is not a bona fide holder, as would be one to whom the stock might have been transferred without such knowledge.  Conceding that the bank possessed the knowledge insisted upon, the position taken does not meet the case.  If the blank endorsement, as we have seen, is sufficient to transfer the entire title, or to create the appearance of such a transfer to one without knowledge of the facts so as to constitute him a bona fide purchaser, so would one obtaining a lesser title from the

appearances which authorized him to believe that the owner intended to transfer such entire title to a bona fide holder to the extent of the interest acquired under the appearances as restricted by notice to the contrary. Because the appellant intended to transfer to appellee a title less than the whole of which the latter had notice, and acting upon the appearances as modified by the knowledge it accepted such lesser title, the bona fides of the transaction to the extent of the interest intended to be transferred by appellant, and which appellee intended to take, is not affected by the fact that a less interest than the whole was acquired. The knowledge of the appellee would only serve to confine the appearances upon which it acted to that which was known by it and intended by appellant.

We, therefore conclude that the statute under consideration does not require that the purpose for which the wife's property is set apart be contained in the writing evidencing the act of setting it apart, and that in this case the blank endorsement of the stock was sufficient to constitute such setting apart.

Again it is contended that if the transaction under consideration was sufficient to have fully complied with the statute then the stock in question was pledged by the wife as collateral security for the first note of $8,829.52 only, and that it was released by the execution of the note on November 13, 1915, for $8,757.52. That an enforceable extension of time to the principal will operate as a release of the surety if the extension was made without his consent is so thoroughly established as not to require a citation of authorities in support thereof. But for such an extension to have that effect it must be one supported by a sufficient consideration. In other words, it must be a contract which is capable of being enforced so that the payee could not proceed to collect it nor the payor legally make payment thereon until the expiration of the extended period. This rule is stated in 32 Cyc. 199, thus: "To effect the discharge of a surety by an extension of time the agreement for a stay of execution or for the extension must be supported by a sufficient consideration, pursuant to the general rule which requires a binding agreement between the principal and the creditor which will tie the hands of the latter.".

Among the cases supporting the rule as quoted are Brinagar v. Phillips, 1 B. Mon. 283, and United States Fidelity, &c. Co. v. Boyd, 29 Ky. Law Rep. 598. There is also found in the note numerous cases from the courts of nearly all the states in the Union. A statement of the rule as adopted by this court is found in the Boyd case, *supra,* where the court says: "Mere passive negligence or failure to act will not release a surety. There must be an agreement founded upon a good consideration, and of such a character as to be binding upon the parties, to such an extent as to disable the creditor from suing or enforcing the collection of his debt. (Cooper v. Fisher, 7 J. J. Mar. 396; Morton v. Roberts, 4 Mon. 491.)"

There is no pretense in this case that there was any sufficient or any consideration for the extension of the maturity of the debt in question by executing the last note. Not even was the interest paid in advance, or any other act done which furnishes in law a valid consideration. It was merely an indulgence which, although evidenced by writing, did not increase its legal effect, and waiving other questions which might sufficiently answer this objection, we are convinced that the rule contended for can not, under the facts of this case, be applied so as to release the collateral.

Upon the whole case we find no error in the judgment, and it is therefore affirmed.