## French et al. v. Boyle et al.

(Decided September 27, 1929.)

E. C. O'REAR, FLOYD J. LASWELL and ALLEN PREWITT for appellants.

R. MILLER HOLLAND for appellees.

620

OPINION OF THE COURT BY COMMISSIONER TINSLEY— Reversing.

On October 31, 1927, W. S. Hinton and his wife, residents of Daviess county, Ky., executed and delivered to Courtney Combs an oil and gas lease on a tract of 25 acres of land in that county. On December 8, 1927, Combs, by indorsement written on the lease, assigned it to appellees, E. J. Boyle, Ruth Boyle, Lula Pheifer, J. P. Grant, and Evelyn O'Flynn. On April 17, 1928, these persons by writing which they each signed, acknowledged, and delivered, sold and transferred the lease to M. B. French & Co., a partnership composed of M. B. French and M. C. Clay, appellants herein.

The lease imposed upon the lessee the obligation to commence the drilling of a well for oil and/or gas within 60 days after its date, and to diligently continue the drilling thereof until it had been drilled to and through the oil producing sand found on the C. M. Jones lease, unless oil or gas, in paying quaitities, be found at a lesser depth, and to fully develop the leased premises by drilling a well on each five acres of the land and to commence the drilling of each subsequent well 60 days after the completion of the preceding well; to deliver to the credit of the lessors, free of expense to them in the pipe line to which the lessee should connect his wells, the equal one-eighth part of all oil produced and saved from the leased premises, and to pay them $100 per year for each gas well from which gas was produced and marketed off the premises.

By the assignment to them, appellants undertook to perform all the terms and conditions of the lease and, in addition, thereto, paid appellees $400 in cash and agreed to deliver to the credit of appellees in the pipe line, free of costs to them, "the equal one-eighth part of all oil produced and saved from the leased premises." Shortly after the drilling of the first well, a dispute arose between the parties to the last assignment; appellees claiming that they were entitled to one-eighth of the gas produced and marketed from the premises as well as one-eighth of the oil, and on December 3, 1928, instituted this action in the Daviess circuit court seeking reformation of the contract of assignment on the ground that "by the mutual mistake of plaintiffs and defendants, and on account of the mistake of the draftsman of the writing evidencing said contract, there was omitted therefrom the stipulation providing for the delivery to the credit of the plain-

tiffs free of cost in the pipe line the equal one-eighth part of all gas produced and saved from the leased premises." Whether such was the contract, and the stipulation set forth above omitted from the contract by mutual mistake of the parties and the mistake of the draftsman of. the writing, is the sole question in issue. The chancellor decreed reformation in accordance with the prayer of the petition, and the defendants have appealed.

The contract was negotiated on behalf of appellants by Mr. L. S. Robbins, and on behalf of appellees by Mr. Courtney Combs and appellee Boyle.

In his testimony Mr. Boyle said: "I made the proposition to Mr. Combs that if he found someone he could make a deal with to let me know, so Mr. Combs came after me to come in and meet Mr. Robbins. I came in and met Mr. Robbins and he asked be the proposition and I made him a proposition. I told him I wanted $2,500.00 for the lease or would take $400.00 and one-eighth of the lease, and he said it sounded like a fair proposition and wanted me to go to the lease with him, and I told him I would and we got in the car and went to the lease and got back and went in my shop and stayed there and talked and Mr. Robbins said, 'I will trade with you one way or the other and I will be back about seven o'clock,; and he left and about seven o'clock he came back and we went out to find Mr. Combs to close the deal and couldn't find him and postponed it; and next morning someone suggested we go to Mr. Laswell to have the contract and we did, and we got there and I told Mr. Laswell the deal word for word, that we was to get $400.00 cash and one-eighth of the lease and we thought that was what we were to get." And he further testified that he would not have signed the contract if he had known it did not include the one-eighth of the gas.

Miss O'Fylnn testified:

"Q. What was the contract between you and the other owners of that lease and M. B. French & Company? A. My understanding was we were to get one-eighth of the entire lease carried through without any exceptions at all.

"Q. What did that mean to you? A. It meant everything regardless of what was found there.

"Q. When you signed it were you advised differently about it at that time? A. I certainly was not."

On cross-examination she was asked:

"Q. Did Mr. French or Mr. Robbins or anybody representing them ever say anything to you about giving any part of this gas, about you getting part of it? A. No, the gas was not mentioned but one-eighth of the least included everything on the lease I think."

She also stated that she would not have signed the assignment had she known it did not include one-eighth of the gas.

Mrs. Pheifer testified:

"Q. Who made this trade for you? A. Mr. Boyle.

"Q. What did you understand th ctrade to be? A. I understood we were to get $400.00 cash and one-eighth interest in the lease carried straight through.

On cross-examination she was asked:

"Q. We had this assignment prepared when you came there? A. Yes, sir.

"Q. And you read it over and signed it without asking me or anybody else any questions? A. Yes, sir."

J. R. Grant testified:

"Q. What was the contract of the assignment? A. We was supposed to get one-eighth and carried through all the oil and gas and $100.00 apiece.

"Q. Who made that contract for you? A. A. J. Boyle.

"Q. Do you know who represented him and all of you in the matter? A. Mr. Combs.

"Q. What is your understanding of one-eighth carried straight through in an oil and gas lease? A. It meant to me if they hit gas or oil we got one-eighth."

Courtney Combs testified:

"Q. What was the contract Mr. Robbins made with those folks? A. I wasn't present when the deal was closed, but the last connection I had with it prior to it being closed, Mr. Robbins was to pay Mr. Boyle $400.00 and drill five wells, I think it was, and carry him for one-eighth.

"Q. What was the understanding or meaning of carrying him for one-eighth? A. My understanding was that he was to have one-eighth of the whole rights.

"Q. Is that what it means all the time among you oil and gas men? A. That is all I ever knew it to mean unless there was some specific arrangement made."

While it has been said that no invariable rule can be laid down as to the quantum of testimony necessary to sustain the burden imposed upon the party who seeks to have a duly executed contract reformed upon the ground of fraud or mistake, since each case must be determined upon its own peculiar facts and circumstances (Farar v. Eli, 195 Ky. 30, 241 S. W. 326), the general rule is that the evidence must be "clear, unequivocal and convincing" (Griffith v. York, 152 Ky. 14, 153 S. W. 31; Anderson v. Sandy Valley & Elkhorn Railroad Company, 171 Ky. 740, 188 S. W. 772); is must be "strong and most satisfactory" (Litteral v. Bevins, 186 Ky. 514, 217 S. W. 369); and the fraud or mistake "must appear beyond reasonable controversy" (Stanley v. Slone, 216 Ky. 114, 287 S. W. 360, 370, and cases therein cited).

Standing alone and uncontradicted, the evidence relied on to reform the contract does not measure up to the requirements of the rule. It is not clear, unequivocal, or convincing; it is neither strong nor satisfactory, nor is a mistake made to appear beyond reasonable controversy.

On the other hand, both Mr. French and Mr. Robbins categorically deny any agreement or understanding by which plaintiffs were to be paid for the gas or to have any interest therein carried for them. Miss Hancock, the stenographer who typed the assignment, says it was dictated to her in the presence of both Mr. Boyle and Mr. French; that nothing was said by any party concerning gas; that the assignment was written by her exactly as dictated to her and was read by all the parties to it before it was signed. Indeed, Mr. Boyle, Miss O'Flynn, Mrs. Pheifer, and Mr. Grant all admit they read the contract before signing it. It is inconceivable that, if the contract was not dictated and written in accordance with the agreement and understanding between the parties, some one of them would not have discovered upon reading it, and before signing, that the interest carried for them by French & Co. was limited to one-eighth of the oil. It ap-

624

pears, therefore, that if there was a mistake it was not mutual, but was the mistake of appellees only, and that mistake, under the pleadings and proof in this case, is not sufficient to authorize reformation of the contract of assignment. Denny et al. v. Crabtree et al., 194 Ky. 185, 238 S. W. 398; Commercial Auto Company v. Brandeis etc., Co., 198 Ky. 155, 248 S. W. 233.

In Litteral v. Bevins, supra, it is said:

" 'To reform an instrument to accord with the intent of one of the parties, when the other is insisting it correctly expresses the agreement as understood by him, the writing thus altered would be just as far from expressing the agreement of the parties as before, and, as said in Diman v. Providence, Warren & Bristol R. Co., 5 R. I. 130:

"The court would have been engaged in the singular office, for a court of equity, of doing right to one party at the expense of a precisely equal wrong to the other.' "

For these reasons the judgment must be and it is reversed, with directions to dismiss the petition.