## Stokes et al. v. Farmers' & Merchants' Bank of Elkton et al.

(Decided November 24, 1931.)

O. P. ROPER and EVERETT S. PENICK for appellants.

S. Y. TRIMBLE and PETRIE & STANDARD for appellees.

OPINION OF THE COURT BY JUDGE BRATCHER—Reversing in part and affirming in part.

On the 31st day of August, 1921, the appellants, W. M. Weathers and his wife and Walter Murrey and his wife, conveyed to G. W. Stokes a certain tract of land in Todd county, Ky., on the Jefferson Davis highway

three miles west of Elkton. At the time of the conveyance, and as a part of the consideration, Stokes executed to W. M. Weathers and Walter Murrey two promissory notes of equal date. By the first he promised to pay to their order $1,000 six months after date, with 6 per cent interest, and by the second he promised to pay to the order of W. M. Weathers and Walter Murrey the sum of $2,500 twelve months after date, with interest at 6 per cent. The notes provided that the interest should be paid in advance semi-annually, and, if not paid, were to become a part of the principal and bear interest until paid. A lien was retained in the deed to secure the payment of these notes. On the day of execution, W. M. Weathers and Walter Murrey transferred the $1,000 note to the appellees' bank, Farmers' & Merchants' Bank of Elkton, Ky., by a special written indorsement thereon, as follows:

"For value received, I or we transfer the within note to the Farmers and Merchants Bank of Elkton, Kentucky and guarantee the payment of this note without regard to time or diligence in the collection of same and hereby waive presentment for payment, notices of maturity, notices of non-payment and dishonor, protest for non-payment and notices thereof this 31st day of August, 1921.

"W. M. Weathers
"Walter Murrey."

The $2,500 note was transferred to the bank by said Walter Murrey and W. M. Weathers, whereupon the bank paid to W. M. Weathers, and Walter Murrey the sum of $3,500. Thereafter the bank by an indorsement "without recourse" transferred the $1,000 note to W. T. Sullivan. No part of the principal, of either of the notes, was paid, whereupon the bank filed this equitable action on the 7th day of October, 1929, for a judgment upon the notes and for an enforcement of its vendor's lien, making W. T. Sullivan a party defendant and asked that he be required to collect his debt of $1,000 from W. M. Weathers and Walter Murrey, and that he be adjudged no lien until his rights against the guarantors were exhausted. By an agreed judgment, the land was sold without prejudice to the right of any of the parties for $2,000. This sale was set aside. On a resale, it was sold to W. M. Weathers for $2,500. The maker of the note, Stokes, made no defense. The defendant Sullivan

filed answer, cross-petition, and counterclaim, asking judgment against Walter Murrey and W. M. Weathers on indorsement on the note and to be adjudged on a lien on the land. The appellants Murrey and Weathers defended upon the grounds:

(1) That, at the time the notes were transferred to appellees' bank, there was a contemporaneous verbal agreement between themselves and the bank at variance with and contradictory to the written guaranty on the back of the note in which agreement they should not be bound personally either the $2,500 note or the $1,000 note, and that the $1,000 note should be a first lien on the land and the $2,500 an inferior lien thereon, and that this agreement was omitted by mutual mistake of both parties.

(2) That the bank released them as indorsers and guarantors on the notes by making new contracts with the maker, Stokes, whereby the time of payment was extended without consent of these indorsers.

(3) That the $2,500 note is barred by the five-year statutes of limitations, section 2515, Kentucky Statutes.

(4) That the $1,000 note should participate with the $2,500 note in the distribution of the proceeds of the land before appellants are required to make good any part of their guarantee.

(5) That the case should have been transferred to the common-law docket for trial.

Upon a final submission of this cause, a judgment was entered awarding W. T. Sullivan a judgment upon his cross-petition against Stokes, Murrey, and W. M. Weathers in the sum of $1,000, with interest from February 28, 1926, until paid. The Farmers' & Merchants' Bank of Elkton was awarded a judgment against G. W. Stokes, W. M. Weathers, and Walter Murrey in the sum of $2,500 from February 28, 1927, until paid. It was adjudged that each had a vendor's lien of equal dignity upon the tract of land which was sold and a lien upon the proceeds, to wit, $2,500. The court using these words:

"It is further adjudged that W. T. Sullivan will, if possible, collect the amount of his judgment by execution against the guarantor, Murrey and W. M. Weathers and that he shall share in the distribution pro rata with the plaintiff of the proceeds of the lands to the extent only that his judgment may be left unsatisfied after his execution shall have been

returned to the office of the clerk of this Court and if any part of his judgment be uncollected under his execution, then as to such deficit or balance left unpaid he will share ratably with the plaintiff in the distribution of the sale of the land.''

We will discuss the questions presented in this appeal in the order above stated. The notes were prepared in the office of the appellant bank by the cashier, J. M. Weathers. During negotiations, the bank had been consulted about taking the notes, and it was agreed between the bank and the appellants W. M. Weathers and Walter Murrey that, if they would indorse the $1,000 note, specially guaranteeing its payment, the bank would take the $2,500 note with a plain indorsement. The bank, by reason of the guaranty on the $1,000 note, was able to transfer it to Mr. Sullivan without recourse. It is argued by the appellants W. M. Weathers and Walter Murrey: That they had a separate verbal agreement with the bank through its officers that they were not to be personally liable on either of these notes; that this land was worth $5,000; that they had received in addition to the notes from Stokes other property valued at $1,500 in the deal; that, instead of looking to these appellants, the bank, by the separate and independent agreement, agreed to look to Stokes and rely upon the vendor's lien as security upon these two notes. They assign as reason for the guaranty indorsement of the note for $1,000 that the bank did not want it to appear that it was loaning more than 50 per cent of the value of the land; for that reason they specially indorsed and guaranteed the $1,000 note. This is strictly contradicted by the testimony of J. M. Weathers, the cashier of the bank.

As this court has said in a number of cases discussing mutual mistake, that, before relief can be awarded to a complaining party upon the ground of mistake or fraud in the obtention of an instrument, the mistake must appear beyond reasonable controversy, and, where such is not the evidence, a court of equity will not interfere to grant relief. French v. Boyle, 230 Ky. 619, 20 S. W. (2d) 439; Griffith v. York, 152 Ky. 14, 153 S. W. 31; Litteral v. Bevins, 186 Ky. 514, 217 S. W. 369. As the evidence is conflicting and the question very much in controversy, we find no merit in this contention.

The second ground relied upon is that the appellee bank extended the time of payment upon these notes by

a new contract without the consent of the indorsers. An examination of the evidence discloses that such was not the case. The section of the Negotiable Instrument Law relied upon, section 3720b-120, Kentucky Statutes, reads: "A person secondarily liable on the instrument is discharged . . . (6) By any agreement binding upon the holder to extend the time of payment, or to postpone the holders right to enforce the instrument, unless made with the assent of the party secondarily liable, or unless the right of recourse against such party is expressly reserved in the original instrument."

Before a person secondarily liable under this section is discharged from his obligations, two things must have happened: The time of payment must have been extended, and the holder's right to enforce the instrument postponed. These acts must have been done without the consent of the person secondarily liable. There is no evidence of any agreement to extend the time of payment. The contract for this extension must be definite, based upon the new consideration. Notes were executed by Stokes for the accrued interest, and upon one or two of these notes the appellant Weathers was a surety. There is no testimony that, at the time these interest notes were executed, there was any agreement made to extend the time of payment of the $2,500 note. The agreements had for their subject interest already accrued upon the note. These transactions were not agreements binding the holder to extend the time of payment. They never for one moment changed or postponed the right of the holder to enforce the obligation as evidenced by this note, or the right of indorsers to pay it and be subrogated to holder's right. The agreement to extend the time must be binding upon the holder, and founded upon a new and valuable consideration. This was not done, hence parties were not discharged. Corydon Deposit Bank v. McClure, 140 Ky. 149, 130 S. W. 971, Ann. Cas. 1912B, 484; Morehead v. Citizens' Deposit Bank, 130 Ky. 414, 113 S. W. 501, 23 L. R. A. (N. S.) 141; Daviess County Bank & Trust Co. v. Wright, 129 Ky. 21, 110 S. W. 361, 33 Ky. Law Rep. 457, 17 L. R. A. (N. S.) 1122; Staib v. German Insurance Bank, 179 Ky. 118, 200 S. W. 322; Henderson v. Phoenix Insurance Co., 233 Ky. 217, 25 S. W. (2d) 359.

The third question that the $2,500 note is barred by the statutes of limitation presents a more serious and difficult proposition. This note was transferred for a

valuable consideration by the appellants W. M. Weathers and Walter Murrey on August 31, 1921, the date it was executed. It was thereby placed upon the footing of a bill of exchange. This note matured August 31, 1922. The appellee bank instituted suit October 7, 1929, more than seven years after the maturity of the note. Notice of nonpayment, protest, and waiver of all requirements was not made on this note, as on the $1,000. Mr. J. M. Weathers, the cashier of the bank, testified that he did not give notice of the maturity of the note to the indorsers and never demanded payment of them. We are of the opinion that this note was, in fact, barred by the five-year statutes of limitation, section 2515, supra. It was error to permit personal judgment against the appellants W. M. Weathers and Walter Murrey upon that note. Coleman v. Coleman's Executor, 189 Ky. 96, 224 S. W. 668; Hazel v. McCullough, 188 Ky. 419, 222 S. W. 100.

The fourth objection is that the $1,000 note should participate in the distribution of the $2,500, the proceeds of the sale before the appellants are required to make good any part of their guarantee of the $1,000 note. A similar question was before this court in the case of Cargile v. Briscoe, 205 Ky. 394, 265 S. W. 929, 930; Reed v. Shirley, 208 Ky. 387, 271 S. W. 73. In the Cargile Case, the consideration was $24,875. The vendor required the vendee to give personal security for $10,000 of that consideration and Mrs. Cargile signed a note for $10,000 as surety thereon. In the course of the opinion, the court said:

"The lien retained to secure them was of equal dignity and effect. From this it follows, it seems to us, that Briscoe was entitled to first have his entire debt paid by enforcement of the lien on the land and by action against the surety, before the surety could appropriate any part of the security afforded by the lien to the vendor, and the mere fact she paid off the $10,000 note secured by lien did not entitle her to be subrogated to the rights of the vendor, except to the extent that the lien on the land was not exhausted by the payment of the vendor's purchase money, with interest."

Further on in the opinion it is stated:

"While Mrs. Cargile was entitled to be subrogated to the rights of the vendor after the pay-

ment of the $10,000 note, equity would not allow her to take from the vendor any part of the security held by him before she became surety on the note, and which he would have had, but for her signing one of the notes as surety. If the land was not exhausted in payment of the vendor's lien, whatever remained was subject to the debt of Mrs. Cargile, who as surety paid the $10,000 note. Her rights under the lien obtained by subrogation were postponed until the vendor had been fully satisfied for the purchase price and interest.''

It is clear in this case that the indorsers of the guaranty on the $1,000 note, Murrey and Weathers, intended by that act to give that note a greater security than its vendor's lien. The bank, perhaps, was induced to accept it by reason of its independent secured status and under the rule announced in the Cargile Case and followed by this court in the Reed v. Shirley Case, the sureties and indorsers of this guaranty are entitled to be subrogated to the lien upon the land only after the $2,500 unguaranteed lien shall have been paid. If, after the sale of this land, these sureties and guarantors are entitled to have such funds, as remain, applied upon the $1,000 note, it is certain they had the right to pay the Sullivan note and be subrogated to all the rights of the holder. These rights, however, are qualified by the above rule and we are holding that this note is not entitled to participate in the distribution of the funds until the $2,500 unsecured and unguaranteed note has been paid. 25 R. C. L. 1350. See also note 37 L. R. A. (N. S.) 1212.

The judgment of the lower court was correct in ordering the funds in the hands of the court to be applied first to the discharge of the $2,500 note and whatever balance remained to be applied on the $1,000 note, and in rendering judgment against the grantors, Murrey and Weathers, for whatever unpaid balance remained on this note. The object of the special guaranty on this note was to insure its payment in all events. It did not remove its character of a vendor's lien, but simply rendered it last in the scale of priority. That being true, the property upon which the lien existed, here the funds in the court, should first be applied upon the unguaranteed $2,500 lien, and, second, whatever remains be applied on the $1,000 note.

The fifth question that this case should have been transferred to the common-law docket is without merit. All the issues involved in this case are equitable.

For the reasons indicated above, the judgment of the lower court is reversed, in so far as a personal judgment was granted against Walter Murrey and W. M. Weathers on the $2,500 note. In all other respects it is affirmed.