## Whitley Lodge No. 148 Of The Knights of Pythias of Corbin v. West et al.

Feb. 19, 1943.

342

Stephens & Steely and M. A. Gray for appellant.

H. C. Gillis for appellees.

OPINION OF THE COURT BY JUDGE SIMS—Affirming in part and reversing in part.

This is a second appeal and only those facts that are necessary for the proper consideration on this appeal will be alluded to which do not appear in the former opinion reported in 288 Ky. 698, 157 S. W. (2d) 320.

Upon a return of the case to the circuit court the appellant, Whitley Lodge No. 148 of the Knights of Pythias, hereinafter referred to as the defendant, filed an amended answer and counterclaim, the first paragraph of which amplified the averments in the original answer seeking a reformation of the deed. The second paragraph averred that the appellees, Mart West (the father of Crit) and William Hacker, hereinafter referred to as the plaintiffs, knew of the easement across the property and at

the time they accepted a deed thereto they waived their right to claim a breach of warranty.

The chancellor sustained a general demurrer to each paragraph of this amendment and transferred the case to the ordinary docket for a jury trial on the question of damages for the breach of warranty. A verdict was returned in favor of the plaintiffs for $1116.25 and from the judgment entered thereon defendant appeals.

The theory upon which the chancellor sustained the demurrer to the first paragraph of the amendment was that the judgment denying reformation had become final when defendant's appeal was dismissed in 288 Ky. 698, 157 S. W. 320. The demurrer to the second paragraph of the amendment was sustained on the ground that a vendee is entitled to enforce a covenant of general warranty although he may know of the existence of the defect in the vendor's title at the time he accepts the deed. We have concluded that both rulings of the chancellor were erroneous.

The former opinion in 288 Ky. 698, 157 S. W. (2d) 320, dismissed the appeal because it was not prosecuted from a final order, which order denied a reformation of the deed. It was there written:

"The order from which the appeal is taken was nothing more than a determination by the court that one of the defenses relied on was without merit. The effect of that order was the same as if the court had sustained a demurrer to the second paragraph of the answer."

We shall later see that the evidence will not sustain a reformation, hence the error in sustaining the demurrer to the first paragraph of the amended answer and counterclaim was not prejudicial. To determine whether or not plaintiffs waived their right to rely upon the breach of warranty it will be necessary to briefly review the evidence.

On July 13, 1937, defendant executed a deed to a lot on the corner of Main and Fourth streets in the City of Corbin to plaintiffs which was put in escrow with R. B. Gillispie, vice-president of the First National Bank of that city, in order that plaintiffs might examine the title to the property before making the first payment. The transaction was handled for defendant by T. A. Watson,

chairman of its board of trustees, who died before this action was instituted and we are deprived of his testimony. The deed contained a covenant of general warranty and failed to reserve a 10 foot right-of-way on the rear of the lot for the benefit of adjoining property, which reservation appeared in the chain of title to the property conveyed. The purchase price was $6000 and the deed was to be delivered by Gillispie to the grantees upon the payment of $2000 cash, a lien being retained in the deed for the balance of the purchase price.

The plaintiff, Hacker, was a building contractor and dealt in real estate, and the other plaintiff, West, was sheriff of the county, a merchant and a man of business experience. While the deed was held in escrow the plaintiffs discovered this 10 foot easement across the back of the lot. Hacker met Watson in the bank and in the presence of Gillispie complained about the easement, and Watson told Hacker that he and West could take the property with the right-of-way across it or else they could call the deal off. Hacker replied that he could not call the deal off because he had made a rental contract with Roy Hill for a building he was going to construct on the property. Both Hacker and Gillispie agreed that this is what transpired. But the record is not clear as to whether Gillispie retained possession of the deed and checks from July 16 to Aug. 3, because of the controversy concerning this easement, or whether the conversation between Watson and Hacker occurred just a few days before the deed and checks were delivered. However, we regard the duration of the controversy over the title as not being of great materiality. The important facts are that the papers were escrowed; a controversy arose as to the right-of-way in which the grantees were told that they could accept the title of the property or call the deal off; and grantees did accept the deed and their checks were delivered to defendant.

Under this evidence there can be no reformation of the deed as it conclusively shows nothing was omitted therefrom and that both parties knew and understood the terms contained therein. Before an instrument may be reformed there must be clear and convincing evidence of a mutual mistake or of fraud on one side and mistake on the other. Irwin v. Westwood Real Estate & Development Co., 200 Ky. 760, 255 S. W. 546; Denny v. Hogue, 265 Ky. 30, 95 S. W. (2d) 1124; Stokes v. Farmers' &

Merchants' Bank of Elkton, 241 Ky. 699, 44 S. W. (2d) 837.

It cannot be doubted that plaintiffs are correct in their contention that the existence of a private right-of-way is a breach of a covenant of general warranty, and that the grantee's knowledge thereof affords no protection to the grantor from his covenant. 15 C. J. 1276, Section 122; 21 C. J. S. Covenants, p. 957, Section 101 et. seq.; Helton v. Asher, 135 Ky. 751, 123 S. W. 285; Patterson v. Jones, 235 Ky. 838, 32 S. W. (2d) 408. But one may waive his right to rely upon a covenant inserted in a deed for his protection. 66 C. J. 943 and 944, Secs. 645, 646; 27 R. C. L. 658, Section 420; Ireton v. Thomas, 84 Kan. 70, 113 P. 306, 32 L. R. A. N. S., 737; Eaton v. Trautwein, 288 Ky. 97, 155 S. W. (2d) 474. The testimony of Gillispie and Hacker above referred to, if not conclusive proof of a waiver, was certainly sufficient to entitle defendant to have submitted to the jury the question of waiver by plaintiffs of the breach of covenant by reason of the easement.

On another trial the court will add at the end of the first instruction a sentence to this effect: Unless the jury believe from the evidence that the grantee, William Hacker, knew of said easement or right-of-way at the time he and West accepted the deed to the property and Hacker agreed with T. A. Watson, the representative of the defendant in making the sale of the lot, that he would accept said property with the easement thereon, in which event the plaintiffs waived their right to rely upon the covenant of general warranty contained in the deed, then the law is for the defendant and the jury will so find. Or the court may reform his instructions and insert the substance of this sentence in a separate instruction and make it a condition in the first instruction that the jury shall find for the plaintiffs unless they find the facts to be as set out in the second instruction.

This was a corner lot, fronting 55 feet and running back 105 feet. As the purchase price was $6000, it sold for approximately $109 a front foot and the 10 foot loss for building purposes due to the easement across the rear of the lot was valued by the jury at $1000. It might be that the rear of the lot was not as valuable as the front, but plaintiffs testified they wanted to put a building on the entire lot and when they had to reduce it by 10 feet they were caused to lower their rental $5 a month.

In these circumstances we cannot say that $1000 was excessive damages. The item of $116.25 damage is the attorney's fee and cost expended by plaintiffs in defending their title, and there is no controversy as to the amount of it.

The judgment of the chancellor refusing to reform the deed is affirmed, and the judgment entered on the verdict is reversed.