## Grant County Assessment Fire Ins. Co. v. Scroggin et al.

Feb. 5, 1943.

C. C. Adams, John L. Vest and Frank S. Connely for appellant.

R. L. Vincent, H. W. Vincent, F. A. Harrison, L. M. Ackman and Lee Lanter for appellees.

OPINION OF THE COURT BY JUDGE TILFORD—Reversing.

This is an appeal by an insurer from a judgment awarding the insured, the appellee Scroggin, $700 for the destruction of a barn allegedly covered by a fire insurance policy. We reversed a similar judgment, primarily for the reason that the application for the policy, unreformed, constituted a complete barrier to a recovery, since it fixed the location of the barn insured a mile and a half from the one which burned. See 283 Ky. 731, 142 S. W. (2d) 987. Instead of amending his petition and seeking a reformation of the application, as we suggested he should do as a preliminary to a recovery, the appellee, on the return of the case to the Circuit

Court filed an amended reply, issue on which was subsequently joined, alleging that the application had been fraudulently altered after its execution by the insertion of the phrase, "one-half mile of pike". Although the court had overruled a motion by appellant to transfer the action to equity, he, nevertheless, treated it as an equitable one in which an issue out of chancery had been granted, by instructing the jury called to hear the testimony to answer "yes" or "no" to the question, whether the application had been fraudulently altered, and, upon their answering in the affirmative, decreeing a reformation of the application eliminating the phrase referred to and awarding appellee the amount sued for.

Appellee's counsel argue that it was entirely proper to plead the alleged fraudulent alteration of the application in avoidance of appellant's answer pleading the application as a defense; but a moment's reflection will convince one of the fallacy of this position. While the material alteration of an instrument sued on is, as contended, a valid defense, cognizable by a jury, to an action on such instrument, it cannot be resorted to by a plaintiff as a substitute for an equitable action for a reformation, since equity alone can reform a writing (Green et ux. v. George et al., 289 Ky. 833, 160 S. W. (2d) 364); the Civil Code of Practice forbids the assertion of a cause of action in a reply (Section 101); and, until a reformation is decreed, the plaintiff has no right of recovery, if reformation of the instrument was necessary in order to render the defendant liable. No hardship is imposed by an insistence upon the observance of these fundamentals of good pleading, since a contract may be reformed (provided the petition states grounds therefor) and judgment rendered thereon in the same action. Rockcastle Gas Co. v. Horn, 241 Ky. 398, 44 S. W. (2d) 273; Cecil v. Kentucky Livestock Insurance Co., 165 Ky. 211, 176 S. W. 986; Castleman-Blakemore Co. v. Pickrell & Craig Co., 163 Ky. 750, 174 S. W. 749; Logan v. Langan, 145 Ky. 599, 140 S. W. 1031; Pictet Spring Water Ice Co. et al. v. Citizens' Insurance Co., etc., Ky., 71 S. W. 514. However, in the present case we cannot say that appellant was prejudiced by the improper procedure employed, since, as above pointed out, the action, on its return to the Circuit Court, was treated as an equitable one, and the verdict of the jury as merely advisory. Appellant's rights may be fully protected by

applying here the rules governing the proper decision of actions for the reformation of instruments. These involve merely the weighing of the testimony for the appellee, since, if the proof was of the character entitling him to the reformation decreed, it is clear that he was entitled to recover the amount for which the burned barn was insured.

Precluded by Subsection 2, Section 606, Civil Code of Practice, from testifying relative to his conversations and transactions with appellant's agent, J. C. Kells, who had written the application and died subsequent to the former trial, appellee was only permitted to state the location of his barns and house; that he had several policies of insurance; that the policy sued on had been issued by the appellant on April 10, 1933; the dimensions and character of the two barns in dispute; that the barn which had burned was worth $1,200; that he had difficulty in obtaining the privilege of inspecting the application which had been in the custody of the appellant from the date that he had signed it; and that the barn actually described in the application was dilapidated and worth not more than $200. On cross-examination he was compelled to admit that on several occasions, notwithstanding its alleged dilapidation, he had knowingly insured the barn described in the application for $700 on valuations in excess of that amount. Appellee's wife testified that Kells wrote the application; that she heard him read it; and that she "never heard anything about one-half mile because I knew that barn was no half mile from the pike," and that from the agent's statement during the conversation, the barn which was insured was "bound to be that barn setting right there on the road." A Mr. Robertson, who was living on the appellee's farm at the time the application was written, testified that on that occasion he saw Kells and appellee inspecting the barn which burned; that the witness then drove down the road with Kells in the latter's car and past the barn which burned, whereupon, Kells said: "This is Mr. Scroggin's barn right here, isn't it"? And upon being answered in the affirmative, said: "That is the one I filled out his applciation for for insurance, he said it had lapsed." Immediately following this, according to the witness, Kells inquired: "He has got one back on the road there, hasn't he?" (The barn described in the application.) Before starting the ride, the wit-

ness had been in appellee's house with Kells, heard the application read, but did not hear anything about "half a mile from the pike." But at the former trial this witness, when asked what the appellee and Kells, during the conversation referred to, had said "about insurance," had answered, "I don't remember just exactly what it was, I didn't pay any attention to that." And this fact, coupled with the evident eagerness of the witness to strengthen his testimony so as to meet all the requirements of appellee's case, subjects his entire testimony to suspicion.

Other witnesses for appellee testified to the location, size and condition of the two barns. One of them stated that the barn which burned was worth $1,400, while the valuations placed upon it by others varied from $1,000 to $1,200. One of them stated that the barn covered by the application was not worth more than $30, and another, that it was worth $150. Another witness who was not asked to state the value of that barn, said that it was in fairly good condition. Two of them saw appellee and Kells in conversation near the burned barn in the spring of 1933, and one of appellee's attorneys testified that he accompanied appellee to appellant's office when the former demanded and obtained an inspection of the disputed application.

At the conclusion of the testimony which we have outlined, appellee's counsel moved the court to permit the reading in evidence as if on cross-examination, of the testimony of Kells given at the former trial, "it being stipulated that Mr. Kells is now dead, upon the theory that his testimony on this previous trial of the same case constitutes a deposition that we have the right to use on cross-examination." The court overruled the motion, and later on it was renewed in the following form:

"* * * that the Clerk of the Grant Circuit Court read the transcript of the evidence of J. C. Kells, a witness and agent for the defendant company, testifying at a former trial of this case in the Grant Circuit Court at Williamstown, Grant County, Kentucky, as his cross-examination of said witness at said former two trials as on cross-examination in order that the same be rebutted by competent evidence in this trial."

The court again overruled the motion, and there-

after, appellee's counsel moved that Kells' former testimony "be made a part of the record herein; and that the transcript of the evidence of the plaintiff, O. R. Scroggin given on the two former trials in the same case between the same parties as aforesaid be made a part of the record herein as an avowal." The court overruled this motion also. It is strenuously insisted by appellee's counsel that by the express terms of Section 4645a-5, KS (KRS 422.150), appellee was entitled to have the testimony referred to read; and that appellant's failure to introduce it, or to consent to its introduction by appellee, is sufficient to raise a presumption that Kells' testimony would have supplied any deficiency in appellee's proof. But a reading of the Statute will disclose that whether or not such testimony may be read is within the discretion of the trial court, and we cannot say that such discretion is abused when the avowed purpose of the introduction of the testimony is to establish a basis for contradicting the testimony of a deceased witness. Gatliff Coal Co. v. Hill's Adm'r, 263 Ky. 309, 92 S. W. (2d) 56. Neither are we able to indulge the presumption which appellee's counsel asks us to indulge, since pursuant to their request that Kells' former testimony be read as a deposition, and in order to ascertain whether or not appellee had been prejudiced by its exclusion, we have read the testimony of Kells given at the former trial and found nothing therein which corroborated in the slightest degree appellee's assertion that the words "one-half mile of pike" were added to the application after its execution. On the contrary, Kells' testimony is clear and specific to the effect that appellee so designated the barn to be insured, and that the words referred to were written in the application as part of the description before appellee signed it.

In view of the obvious deficiencies in appellee's proof but little need be said with reference to that introduced by appellant. Showing that the barn described in the application had been consistently over a period of years, insured for a substantial amount, it destroyed any favorable inferences which might otherwise have been drawn from appellee's proof of the barn's lack of value. Likewise the fact that the barn which was burned perfectly fitted the dimensions set forth in the application, while the unburned one did not, is deprived of substantial effect by the fact that in previous applications

varying dimensions of both barns were given, conducing to the belief that when applications were taken the dimensions were largely a matter of estimate or memory. There was also testimony indicating that when he was shown the application after the fire, appellee made no claim that the application had been altered. Furthermore, no motive for the alteration of the application by Kells is shown, and his son testified that the entire application, except the printed portions, was in his father's handwriting.

J. S. Webb, now president of the appellant company, and at the time a director and member of the executive committee, who, with another director, approved the application on April 10, 1933, the day it was written, testified that the words "one-half mile of pike" were on the application when he approved it, and that this phrase identified the barn to him at the time.

Finally, we have examined the original application, and are convinced that the descriptive phrase "one-half mile of pike," was not only written by the same person who wrote the other portions of the application, but that it was written at the same time and with the same pencil. We are not called upon to reconcile appellant's proof with appellee's presumed integrity. It may well be, since he owned much property, and on occasions insured in "old line" companies, that he was honestly mistaken in his belief that the policy sued on covered the barn which was burned. However this may be, we are compelled to hold that appellee's proof was not of the clear and convincing character necessary to warrant a court in reforming an executed written agreement. Grim et al. v. Grim, 290 Ky. 474, 161 S. W. (2d) 918; Sutton et al. v. Noe, 289 Ky. 657, 159 S. W. (2d) 997; Life & Casualty Insurance Co. v. Deaton, 275 Ky. 151, 120 S. W. (2d) 1033; Royer Wheel Co. v. Miller, Ky., 50 S. W. 62; Worley v. Tuggle, 4 Bush 168.

This conclusion renders unnecessary any discussion of the other grounds urged for reversal.

Judgment reversed with directions to dismiss the petition.