## Hyden v. Grissom et al.

September 30, 1947.

Rehearing denied January 20, 1948.

John S. Cooper, Judge.

262

J. J. McBrayer and David S. Weil for appellant.

B. J. Bethurum and R. R. Jones for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE SIMS—Reversing.

Appellant, Bate Hyden, sued T. B. Grissom and H. Z. Rakestraw, partners doing business as Grissom-Rakestraw Lumber Company, to reform a timber contract and to recover $60,000 as his one-half of the profits under the reformed contract. The answer denied there was any ground for the reformation of the contract and averred appellees were ready to pay appellant all sums due him upon a settlement of accounts under the terms of the contract. Appellees moved that the cause be transferred to equity and referred to a commissioner since it involved many complicated questions of accounting.

Over appellant's objection the case was transferred to equity and referred to Hon. Gladstone Wesley, Master Commissioner of Pulaski Circuit Court, who filed a lengthy report to the effect that appellant's proof was insufficient to cause the contract to be reformed; but on a settlement of accounts he found that appellees were indebted to appellant in the sum of $2573.44, with six per cent interest from January 1, 1945. Both parties filed exceptions to the commissioner's report which were overruled by the chancellor, who entered a judgment in conformity with the report. From that judgment Hyden appeals.

We cannot regard seriously appellant's contention that the court erred in sustaining appellees' motion to transfer this cause to equity and in referring it to the commissioner to hear proof and settle the accounts, or that the court erred in entering a subsequent order authorizing the commissioner to pass upon certain legal questions which had arisen and to report to the court his findings of law and of fact. This being a suit for the reformation of a writing, it was cognizable only in equity. 45 Am. Jur., Reformation of Instruments, pp. 584, 585, secs. 1-5; Grant County Assessment Fire Insurance Co. v. Scroggin, 294 Ky. 244, 171 S. W. 2d 1. As this case involved complicated questions of accounting covering a period of some two years, and as it would have been impracticable for a jury to intelligently try the issues, it would have been proper for the judge to have transferred the case to the equity side of the

docket on his own motion under sec. 10(4) of the Civil Code of Practice, even if it had not been purely an equitable action. Kramer v. Kramer, 288 Ky. 150, 155 S. W. 2d 766. The questions of law before the commissioner concerned the competency of certain testimony and whether or not the evidence justified a reformation of the contract. Manifestly, he was authorized to rule on these questions in the report submitted to the court.

Mr. Hyden, who is greatly handicapped by being totally blind, quite hard of hearing and uneducated, on February 10, 1943, obtained a deed from Kentucky Land Shares, Inc. (hereinafter referred to as the Company), to all timber "12 inches and larger, 12 inches from the ground, except the cedar, which shall be 8 inches and larger, 8 inches from the ground," on a tract of land known as Jasper Bend on Cumberland River in Pulaski County. The various witnesses estimated this land as containing all the way from 300 to 600 acres. It seems that it was never surveyed. Under the deed the timber had to be removed within eighteen months from February 10, 1943. The evidence shows that Hyden had until Mar. 1, 1943, to pay the purchase price of $1500 for this timber.

Hyden was without funds to pay for the timber so he negotiated with H. Z. Rakestraw to sell the timber to appellees. On the last day of February they agreed on a trade in Burnside and were to meet the next day in Somerset and enter into a written contract. It is not disputed that appellees were to pay the Company the $1500 Hyden owed it; also, they were to pay $300 cash to Hyden, who was to transfer the timber to them. These payments were made and the timber was transferred by appellant to appellees, who agreed to comply with all the terms in the deed the Company had executed to Hyden. In addition to these payments, appellees were to pay Hyden one-half of the net profits they received from working the timber.

On March 1, 1943, the parties met in Somerset in the office of Mr. Homer Neikirk, Hyden's attorney, who proceeded to draw up a contract which provided that appellees were to work all timber in accordance with the terms of the deed the Company made Hyden and were to pay "all cost attached to working said timber and

lumber and are to pay Hyden one-half of all the net profits obtained by reason of the working and sale of said timber. The rate of pay to be used, it is agreed, is to be the prevailing rate paid by party of the second part (appellees) for like lumber delivered to its yards at Burnside, Ky. It is specifically understood that the party of the second part (appellees) is to pay all cost and that all cost is to be deducted before the net profits are ascertained and so paid over to the party of the first part (appellant). It is agreed that party of the second part (appellees) are to settle with the party of the first part (appellant) as soon as practical after all timber has been removed and disposed of by the party of the second party (appellees) on said land.''

It was testified by Hyden and his 17 year old daughter, Ester (who led her father around), that in Burnside it was agreed between him and Rakestraw that appellees were to be credited with $20 per thousand feet as the expense for cutting the timber, logging it to the mill, sawing it and hauling the lumber to their yards in Burnside, which was twenty miles from the woods. They also testified it was agreed in Burnside that Hyden was to have one-half of the entire profits based on the price appellees received for the lumber. That by mistake and oversight, or by fraud, the $20 expense provision was omitted from the contract, as was the provision giving appellant one-half of the entire profits based on the price appellees receive from the sale, and in lieu of this latter, the contract provided the profits were to be based on the prevailing rate paid by appellees at their yards for like lumber.

Rakestraw denied that he agreed with Hyden in Burnside that appellees were to be limited to $20 per thousand feet as their expense in cutting and converting the timber into lumber and hauling it to Burnside, or that he agreed the profits were to be based on what they received for the sale of the manufactured lumber, but that the profits were to be determined by the prevailing price they paid at their yard for like lumber. Rakestraw testified that the writing correctly incorporated the contract as he and Hyden made it in Burnside and was written just as he and Hyden told Neikirk to draw it.

Rakestraw is corroborated by the testimony of Neikirk, who testified that as Hyden's attorney he wrote the contract just as Hyden directed him to write it, and then twice read it over to Hyden in a loud voice, and the latter said the contract suited him. Hyden denied hearing the contract read but his daughter, Ester, testified that Neikirk read it to her father "real fast and only once." It was admitted by Hyden that he received a carbon copy of the contract, and while he discovered the omission three or four months after it was written when discussing the writing with Ester, he did not take it up with Rakestraw because "they had treated me in such a manner I thought it best to keep my mouth shut;" and he never mentioned the alleged omission and error in the contract to anybody until he took it up with his attorney, Mr. Pope, some eighteen months later when this action was brought.

A court of equity will only reform a contract for fraud or mistake when the evidence is clear and convincing so as to establish the fraud or mistake with reasonable certainty. Mayo Arcade Corp. v. Bonded Floors Co., 240 Ky. 212, 41 S. W. 2d 1104; Brown v. Union Central Life Ins. Co., 241 Ky. 514, 44 S. W. 2d 514. This does not imply that there shall be no conflict in the evidence, but that the testimony taken as a whole leaves but little, if any, doubt that the writing does not express the true agreement of the parties due to fraud or mistake. Irwin v. Westwood Real Estate & Development Co., 200 Ky. 760, 255 S. W. 546. This record does not present evidence which is sufficiently clear and convincing to have caused the chancellor to reform this writing. On the contrary, the evidence preponderates on the side of appellees that the writing contained the true contract the parties made.

Appellant insists that under sec. 606(4) of the Civil Code of Practice that his attorney, Mr. Neikirk, was not a competent witness to testify against him. But he is wrong in this. An attorney may testify as to matters affecting the client, except as to confidential communications. Certainly, an attorney may testify as to what transpired between his client and the other party to a contract while the attorney was writing it and all three were present and heard all that was said. 70

C. J. sec. 233, pp. 175-178; Hunt v. McCloud, 231 Ky. 801, 22 S. W. 2d 285. Nor did the court err in failing to require appellees to testify as to what price they received for the lumber after it was delivered to their yard, since under the contract the profits were to be determined not on the price appellees subsequently received for the lumber but on the price they were paying for like lumber received or purchased by them in their yards.

We come now to the question of whether or not the chancellor was correct in adjudging that on an accounting under the written contract appellees are indebted to appellant in the sum of $2573.44. There is but little dispute that the chancellor correctly held that the $1500 appellees paid for the timber, together with the $300 they paid Hyden on signing the contract, as well as the $438.66 they expended in building a road to get the lumber out of the woods, are all properly chargeable as items of expense. But the $300 appellees paid the Company to obtain two extensions of time within which to remove the timber cannot be charged as expense because this was made necessary by appellees failing to comply with their contract with Hyden to remove the timber within eighteen months from Feb. 10, 1943. It is not clear from the record whether the chancellor allowed this $300 item for the two extensions as an expense. If he did refuse to allow it as an item of expense, he correctly adjudged to Hyden one-half of the profits on 797,570 feet of manufactured lumber to be $1742.19. But if he adjudged this item was properly charged as expense, this $1742.19 will be increased by $150.

The proof is highly conflicting as to the amount of timber left standing and we will not disturb the chancellor's finding that it was 175,000 feet, since at most we are left only in doubt as to this being correct. But instead of adjudging Hyden $831.25 as his one-half of the profits on this standing timber, the chancellor should have increased it by $150 and fixed it at $981.25, because he allowed an item of $300 as expense for maintaining the road in getting out this 175,000 feet when this timber was not cut. Should it be cut later and hauled over this road, there is nothing in the record to show that $300 would have to be expended on the road in order to haul this lumber over it. In all other respects we

approve the formula used by the chancellor in arriving at appellant's one-half of the profits of this 175,000 feet of timber left standing by appellees, since he did not include items of expense which did not recur.

There is much controversy in the evidence as to the amount of timber under the bluff, hence we will not interfere with the chancellor's finding that it was 100,-000 feet as our minds are in doubt on that question. But we are not in accord with the chancellor that this 100,000 feet under the bluff could not be worked at a profit and that appellant may not recover anything for appellees' failure to get it out. Under the contract appellees were to get out all the timber of certain dimensions. We construe this, as did the chancellor, to mean here, where the net profits are to be divided, that appellees were to cut only such timber as could be profitably worked. The chances are that it would cost appellees more money to get these trees under the bluff to their mill. But the burden was on them to show how much more, which they did not do. True, they produced testimony that it would cost them "as much again" to handle this timber under the bluff as it would to get out that which was more accessible.

Such testimony is more of a conclusion than a statement of fact and has but little probative value. It is common knowledge that it costs no more to cut a tree under a bluff than at any other place. Likewise, it costs no more to saw such a log or haul the lumber it makes from the mill in the woods to Burnside. The only additional cost appellees would incur would be in skidding, or snaking, it from under the bluff to the mill, and several witnesses for appellant testified that this could be done at not an excessive figure. Appellees do not produce evidence on this additional cost but content themselves with introducing testimony that the timber under the bluff could not be manufactured at a profit. They made no effort to get it out, hence they do not know with certainty whether or not they could manufacture it at a profit.

In addition to increasing, as above directed the $2573.44 due appellant, with interest from Jan. 1, 1945, the chancellor will allow him the further sum of what his one-half of the profits amount to on the 100,000 feet

of timber appellees failed to cut under the bluff. In arriving at appellant's profit on this timber, the chancellor will use the same formula he applied in determining his profits on the 175,000 feet appellees left standing above the bluff, except no expense will be allowed for maintaining the road. Of course, this sum will bear interest from Jan. 1, 1945.

The judgment is reversed with directions that one be entered in conformity with this opinion.