## FRANCIES v. FRANCIES et al.

Court of Appeals of Kentucky.
May 23, 1952.

O. M. Smith, Russellville, for appellant.

H. G. Davis, Geo. S. Boone, Elkton, for appellees.

CULLEN, Commissioner.

M. N. Francies brought an action to set aside, on the grounds of fraud, undue influence and failure of consideration, a deed by which he had conveyed his farm to his nephew, Coy Francies, and the latter's wife Nellie Grace. Pending the action, but after M. N. Francies had given his deposition, he died, and the action was revived in the name of his executor, who also was the sole devisee under his will. The action was tried before the chancellor, without a jury, and judgment was entered for the defendants, upholding the deed. The executor appeals.

The appellant contends: (1) Because of the inadequacy of the consideration for the deed, and the confidential relationship between the parties, the grantees had the burden of proving that there was no undue influence or fraud practiced by them, and they failed to meet that burden; (2) the proof establishes conclusively that there was a failure of consideration. Upon careful analysis, it appears that the substance of appellant's argument is that fraud or misrepresentation was exercised by the grantees in causing to be omitted from the deed certain duties it was agreed the grantees were to perform, and that the grantees failed to perform those duties, resulting in a failure of consideration.

The farm in question contained 150 acres, of which some 50 acres were under cultivation, and its value was in the neighborhood of $6,500. The deed by which M. N. Francies and his wife conveyed the farm to Coy and Nellie Francies reserved a life estate in the grantors, and under the heading "Considerations" the deed required the grantees:

1. To move onto the farm and reside in a tenant house thereon, during the lives of the grantors.

2. To farm the land in a good and husbandlike manner, paying to the grantors one-third of the proceeds from the crops.

3. To pay to the grantors each year during the remainder of their lives, the sum of $200 in cash.

4. To "look after and take care of the parties of the first part so long as either of them shall live by performing the following services, to wit: * * * furnish the first parties wood by cutting same off of the premises herein conveyed and de-

livering same to the first parties or the survivor at their house; * * * do all washing necessary and required for the first parties; * * * nurse and wait upon generally the first parties so long as either of them shall live, however, the second parties shall in no way be bound for the first parties board, medical care or attention or special services in addition to the personal services herein specified to be rendered by said second parties."

Although some slight effort was made to show that the grantees did not farm the land in a husbandlike manner, and did not at all times keep the grantors supplied with wood, there was no substantial claim that the grantees did not meet the specific obligations imposed upon them by the deed. The real controversy is as to whether the grantees were obligated to make the beds, cook, carry water, do the cleaning, and otherwise keep house for the grantors, and whether the grantees failed to perform these latter services.

As we view the case, the question of undue influence does not enter in. M. N. Francies, in his deposition given before his death, did not in any way suggest that the agreement he claimed was made with Coy and Nellie Grace was unfair or inequitable, or that he was overreached or taken advantage of. His only contention was that the deed did not correctly express the real agreement, and that he was deceived as to the contents of the deed.

The evidence convinces us that Mr. Francies was fully cognizant of all provisions of the deed, and was in no way misled. His testimony on deposition indicates that he was a sharp and alert old man, well aware of the nature and value of his property, and fully capable of making a business transaction. The grantees, and the attorney who drew the deed, testified that Mr. Francies went to the attorney's office alone, and explained what he wanted the deed to provide; he later returned with his wife and with Coy and Nellie Grace and the deed was dictated by the attorney in the presence of all of them; after being typed the deed was read aloud by the attorney, and then was read again in a loud voice for the benefit of the elder Mrs. Francies, who was hard of hearing. The attorney further testified that the terms of the deed were as desired and requested by Mr. Francies.

The appellant makes some contention that the testimony of the attorney was not competent, because it disclosed a confidential communication between attorney and client, but it is clear that there was no privileged communication involved here. See Hyden v. Grissom, 306 Ky. 261, 206 S.W.2d 960; Schimmelpfenning v. Jungkind, 273 Ky. 182, 115 S.W.2d 895; Hunt v. McCloud, 231 Ky. 801, 22 S.W.2d 285.

Actually, it does not make much practical difference whether the deed should be construed as requiring the grantees to perform the general housekeeping duties contended for by the appellant, because we think the evidence warrants the conclusion that the grantees did perform such general housekeeping duties as the grantors desired and would permit them to perform.

The evidence establishes that the grantees, a short time after the deed was executed, moved into the tenant house referred to in the deed, which was located only 40 yards from the main house in which the grantors lived. At that time, M. N. Francies was 81 years of age and his wife was 87. A month later, the elder Mrs. Francies suffered a stroke, and after a two-day illness she died. During the one-month period, the elder Mrs. Francies did most of the cooking for herself and her husband, but Nellie Grace helped with the cooking on a few occasions and did some sweeping and miscellaneous household tasks. During the two days Mrs. Francies was ill, Nellie Grace nursed her, administered medicine, cooked the meals, and took care of the house.

After the death of Mrs. Francies, Coy and Nellie Grace, and their two small children, moved into the main house with the old man. He testified that they moved in on their own initiative and against his wishes, but they testified that the move was at his request, in order that they might better care for him. Coy and his family

lived in the house from December 1947 until June 1948, when they moved back to the tenant house. Again there is a conflict in the testimony as to the reason for the move; the young people testifying that the old man ordered them to move out, and he testifying that they just moved out and left him.

There is not much dispute as to nature of the services rendered by Coy and Nellie Grace during the period they lived in the main house. Nellie Grace did the cooking and housekeeping in addition to helping her husband with the farm work. The elder Mr. Francies testified that at no time during the winter months was a fire built for him in the room he occupied, and that his bed was made only occasionally, but there was other evidence to the contrary.

The real argument concerns what happened between the time Coy and his family moved back into the tenant house in June 1948, and the time the action to set aside the deed was brought in December 1948. The proof for the appellant is to the effect that Coy and Nellie Grace literally abandoned the old man, except for doing his washing and bringing in some wood; that for two weeks after they moved out he had nothing but bread and crackers; that two neighbor ladies than took pity on him, and commenced to cook for him; that he had to depend on neighbor boys to draw water for him from the well; and that he was left alone in the house in a weak and helpless condition.

The proof for the appellees is that Nellie Grace continued to do sweeping and cleaning for the old man; that she visited him almost every day to inquire as to his needs; that on several occasions she offered to cook for him, and he declined the offers (however, the two neighbor ladies testified that these offers were made at times when they had just completed the cooking); that the old man put a padlock on the well so they could not draw water for him; and that the old man stubbornly refused to let them perform services for him. One of the appellant's witnesses, a neighbor boy, testified that he had heard the old man say he would not ask Coy and Nellie Grace to do anything for him, and that he "would rather have somebody else do it." Another neighbor testifying for the appellees, said that on one occasion he told the old man, "I believe Coy and Grace will look after you," and he replied, "I know it but I don't want them about me and they come and offer to do but I don't want them around me."

 This case resolves itself into a simple question of fact, on which there is conflicting evidence. The testimony of Coy and Nellie Grace was corroborated by other witnesses, and it is not unbelievable. We think that the chancellor was entitled to reach the conclusion that the grantees did everything that could be expected of them towards the performance of their contract, and we have no doubt as to the correctness of his decision that the deed should be upheld.

The judgment is affirmed.